# EXHIBIT A

November 22, 2024

# TSG VISION FUND SERIES AI 1024 LLC, A SERIES OF TSG VISION FUND LLC

**Confidential Private Placement Memorandum**

This Confidential Private Placement Memorandum ("**Memorandum**") describes an offering of limited liability company membership interests ("**Interests**") in TSG VISION FUND SERIES AI 1024 LLC, a series of TSG Vision Fund LLC, a Delaware limited liability company (the "**Fund**") by TSG Vision Fund Manager LLC a Delaware limited liability company (the "**Manager"**). It is being furnished to you on a confidential basis so that a prospective investor may consider purchasing Interests. This Memorandum and the information contained herein may not be reproduced or provided to others who are not directly involved with your decision regarding the purchase of these Interests. By accepting delivery of this Memorandum, each prospective investor agrees to the foregoing and to return this Memorandum upon request.

The Fund is organized for the purpose of making a venture capital or growth equity investment in a leading specific seed-stage, early-stage, developmental-stage, or later-stage private companies in sectors chosen for near-term growth; by purchasing the interest in a special purpose vehicle whose portfolio is comprised of one or more companies consistent with the Fund's general investment focus. From time to time, the Manager may elect to hold investments of the fund with the Manager (or one or more of its respective affiliates) for the sole benefit of the fund subject to a liquidity event of the investment.

The offering of these Interests is not registered pursuant to exemptions from registration under the securities laws, and the Interests may not be sold or transferred without compliance with applicable securities laws. The SEC and the various state securities agencies have not reviewed or passed upon the merits of this offering.

Interests in the Fund are being offered only to "accredited investors" under Regulation D under the Securities 1933 Act of 1933. Each prospective investor must represent that it is purchasing Interests for its own account, for investment purposes and not for resale or distribution, and to indemnify the Fund and certain other persons for breaches of such investor's representations. It is anticipated that the offering and sale of Interests will be exempt from registration pursuant to the safe harbor exemption provided by Rule 506(c) of Regulation D promulgated under the 1933 Act, and the Fund will require that investors provide information sufficient for the Fund to verify each investor's status as an "accredited investor." The minimum commitment by a purchaser of Interests in the Fund is $25,000, although the Manager may, in its sole discretion, offer or sell Interests in smaller amounts.

The offering of Interests in the Fund is being made solely pursuant to this Memorandum, and any information regarding the Fund or Interests in the Fund that is not contained herein shall not constitute an offering of Interests in the Fund. Any supplement furnished by the Fund specifically referencing this Memorandum is incorporated herein by this reference. No person has been authorized in connection with the offering to give any information or to make any representations other than as contained in this Memorandum or incorporated herein by reference. This Memorandum is not an offer to or any person or entity in any jurisdiction in which it is unlawful to make such an offer.

An investment in the Fund will involve significant risks due to, among other things, the nature of the Fund's investments, the nature of the Interests, and actual or potential conflicts of interest. There can be no assurance that the Fund's rate of return objectives will be realized or that there will be any return of capital. See "Risk Factors," "Summary of Terms of the Offering," and

"Conflicts of Interest." Investors should have the financial ability and willingness to accept the risks (including, among other things, the risk of loss of their entire investment and the lack of liquidity) that are characteristic of the investments described herein and should consult their financial and legal advisors regarding the appropriateness of making an investment in the Fund. There will be no public market for the Interests, and, without the prior written consent of the Manager, the Interests will not be transferable.

Investors should not construe the contents of this Memorandum as offering investment, tax, or legal advice. This Memorandum is provided for assistance only and is not intended to be and must not alone be taken as the basis for an investment decision. In making an investment decision, investors must rely on their own examination of the issuer and the terms of the offering, including the merits and risks involved. Each prospective investor should make such investigations as it deems necessary to arrive at an independent evaluation of an investment in the Interests offered by this Memorandum and should consult its own legal, accounting and tax advisors regarding an investment.

Prior to purchasing any Interests, prospective purchasers should obtain the Subscription Booklet relating to the offering of Interests (the "**Subscription Booklet**"), which contains important forms of agreements and other documents relating to the Fund and the offering of Interests. Certain of the documents contained in the Subscription Booklet are described in summary form herein; these descriptions do not purport to be complete and each such summary description is subject to, and qualified in its entirety by reference to, the actual text of the relevant document included in the Subscription Booklet.

THIS MEMORANDUM CONTAINS FORWARD-LOOKING STATEMENTS THAT INVOLVE RISKS AND UNCERTAINTIES. DISCUSSIONS CONTAINING SUCH FORWARD-LOOKING STATEMENTS ARE FOUND IN THE MATERIAL SET FORTH HEREIN UNDER THE CAPTIONS "INTRODUCTION AND OVERVIEW" AND "INVESTMENT STRATEGY" AND ELSEWHERE. WHEN USED IN THIS MEMORANDUM, THE WORDS "ANTICIPATE," "BELIEVE," "INTEND," "EXPECT," "ESTIMATE" AND SIMILAR EXPRESSIONS ARE GENERALLY INTENDED TO IDENTIFY FORWARD- LOOKING STATEMENTS. ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS AS A RESULT OF CERTAIN FACTORS, INCLUDING THE RISKS DESCRIBED UNDER THE CAPTION "RISK FACTORS." NO ASSURANCE CAN BE GIVEN THAT THE FUND'S TARGET OF FUTURE PERFORMANCE WILL BE REALIZED.

THE INTERESTS HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE 1933 ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD.

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT IN RELIANCE UPON AN EXEMPTION TO THE REGISTRATION PROVISIONS THEREOF. ANY PURCHASE IS VOIDABLE BY THE INVESTOR WITHIN THREE (3) DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY THE INVESTOR TO THE FUND, AN AGENT OF THE FUND OR ANY ESCROW AGENT. A WITHDRAWAL WITHIN SUCH THREE (3) DAY PERIOD WILL BE WITHOUT FURTHER LIABILITY TO ANY PERSON.

THE INTERESTS MAY BE SOLD ONLY TO ACCREDITED INVESTORS, WHICH FOR NATURAL PERSONS ARE INVESTORS WHO MEET CERTAIN MINIMUM ANNUAL INCOME OR NET WORTH THRESHOLDS.

THE INTERESTS ARE BEING OFFERED IN RELIANCE ON AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT AND ARE NOT REQUIRED TO COMPLY WITH SPECIFIC DISCLOSURE REQUIREMENTS THAT APPLY TO REGISTRATION UNDER THE 1933 ACT.

THE U.S. SECURITIES AND EXCHANGE COMMISSION HAS NOT PASSED UPON THE MERITS OF OR GIVEN ITS APPROVAL TO THE INTERESTS, THE TERMS OF THIS OFFERING, OR THE ACCURACY OR COMPLETENESS OF ANY OFFERING MATERIALS.

THE INTERESTS ARE SUBJECT TO LEGAL RESTRICTIONS ON TRANSFER AND RESALE AND INVESTORS SHOULD NOT ASSUME THEY WILL BE ABLE TO RESELL THEIR INTERESTS.

INVESTING IN THESE INTERESTS INVOLVES RISK, AND INVESTORS SHOULD BE ABLE TO BEAR THE LOSS OF THEIR INVESTMENT.

STATEMENTS IN THIS MEMORANDUM ARE MADE AS OF THE DATE ON THE FRONT COVER HEREOF UNLESS OTHERWISE STATED. NEITHER THE FUND NOR ANY OTHER PERSON SHALL HAVE ANY DUTY TO UPDATE ANY INFORMATION CONTAINED IN THIS MEMORANDUM.

Further information is available upon request. Inquiries should be directed to

TSG Vision Fund Manager LLC

3275 Veterans Memorial Hwy Suite B9

Ronkonkoma, NY 11779:

**Contact:** Daniel Rutledge, Fund Administrator

**Phone:** (631) 210-7263

**Email:** drutledge@tsginvest.com | fundadmin@tsginvest.com

## TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION AND OVERVIEW | 1 |
| SUMMARY OF TERMS OF THE FUND | 5 |
| MANAGEMENT | 14 |
| CONFLICTS OF INTEREST… | 15 |
| OPERATING AGREEMENT | 17 |
| RISK FACTORS | 18 |
| CERTAIN REGULATORY MATTERS | 30 |
| CERTAIN TAX AND ERISA CONSIDERATIONS | 31 |
| SUBSCRIPTION PROCEDURES | 40 |
| CERTAIN STATE LAW NOTICES | 41 |

# INTRODUCTION AND OVERVIEW

TSG VISION FUND SERIES AI 1024 LLC, a Delaware series limited liability company (the "**Fund**"), has been established primarily to make venture capital and growth equity investments in various leading seed-stage, early-stage, developmental-stage, and later-stage private companies, including, without limitation, companies engaged in social media, digital media, cleantech, and life sciences businesses (a **"Core Holding"** or "**Portfolio Company**") through the purchasing of the interests in a special purpose vehicle, TSG Invest Ventures SPV AI 1024 LLC ("**SPV**"), via a simple agreement for future equity ("**SAFE**"), whose portfolio is comprised of the Portfolio Company. TSG Vision Fund Manager LLC is the Manager of the Fund which has been established for the purpose of: (1) making a separate and distinct investment directly in a Portfolio Company or a basket of Portfolio Companies; (2) purchasing securities of a Portfolio Company or Portfolio Companies from secondary sources (directly or through forward purchase contracts); or (3) investing in interests of investment funds, special purpose vehicles and other entities (including investment funds, special purpose vehicles and other entities affiliated with the Manager or its affiliates) whose portfolios are comprised of one or more Portfolio Companies consistent with the Fund's general investment focus. From time to time, investments in the Fund will be held by the Manager (or one or more of its respective affiliates) for the sole benefit of the Fund, subject to a liquidity event of the investment.

The Fund intends to create returns for its investors by identifying and investing in what it considers to be leading edge businesses that have the potential to make significant returns for the Investors. The Fund will seek long-term capital appreciation with respect to its investments and exits are projected for two (2) to five (5) years following each initial investment, although returns on investments may take longer.

The Fund's investments generally will take the form of equity in a SAFE of the SPV's underlying portfolio. **For avoidance of doubt, the Fund does not directly invest in the Portfolio Company**. Rather, the Fund will invest in the SAFE which provides future equity in the SPV's assets, which include its interests in the Portfolio Company. See "Risk Factors" for additional information related to the risks of this investment.

## The Opportunity

The investment professionals of TSG Vision Fund Manager (the "TSG Vision Team"), a Delaware limited liability company and its principals have been active in investing in various private companies over the last several years, including companies engaged in social media, digital media, and other technology businesses. Over the last several years there have been a number of rapid and fundamental developments in technology and consumer usage that the TSG Vision Team believes will provide opportunities to create and build many new successful businesses. While the Fund's initial investment focus will generally be targeted at technology companies, the Manager will consider all investment opportunities that may be suitable for investment by the Fund.

Set forth below are a number of ways that the Manager believes that the Fund is well positioned to take advantage of investment opportunities.

- The TSG Vision Team, through its large network of associates and companies within the Fund's investment focus, believes it may have significant deal flow of new companies and access to stockholders of companies within the Fund's investment focus who are looking to liquidate their holdings in a Portfolio Company prior to an initial public offering ("IPO").

- The TSG Vision Team or their affiliates believe it may manage other investment funds, special purpose vehicles, or other entities that have a similar investment focus as the Fund, and the Fund may purchase membership or partnership interests in other investment funds, special purpose vehicles and other entities in order to take advantage of the upside of those entities' own investment portfolios. See "Conflicts of Interest."

- The TSG Vision Team will seek to take advantage of key trends it has identified in the digital media, social media, information technology, web-based, mobile and software sectors, and the convergence of media and technology.

**Use of Proceeds; Fees**

The Fund may make a continuous offering, with no set size and end date. The Manager expects to originate and acquire capital contributions on a frequent and ongoing basis and will continue to do so indefinitely unless otherwise determined by the Manager in its discretion**.** The Fund expects to have an expected capital raise of $2,277,000.00 with a minimum capital raise of $455,400.00. Upon reaching the Minimum Raise, defined herein, the Fund may, at the discretion of the Manager, provide the raised capital to the SPV in exchange for the SPV collateralizing the raised capital against the assets held in the SPV. Such collateralization of the SPV assets shall occur during the Offering Period. At the Final Closing, as defined herein, a SAFE shall be issued by the SPV to the Fund memorializing the Fund's right to the underlying assets of the SPV, including the SPV's interests in the Portfolio Company.

There are no fees associated with the Fund other than the Carried Interest, as defined in the "Summary of Terms of the Fund", below, and as described in the Operating Agreement. The Manager expects to use the net offering proceeds from the Offering to invest directly or indirectly in Portfolio Companies. See "Investment Strategy" and "Summary of Terms of the Fund."

To acquire interests in Portfolio Companies, the Manager may cause certain of its affiliates to acquire interests, either directly or indirectly, through special purpose vehicles via acquiring interest in the special purpose vehicle itself that holds such interests in the specific Portfolio Company. When determining the price of the interests to be sold to the Fund, TSG Vision Team derives a market value using a combination of several metrics (including appreciation) that it employs in its pricing mechanism (such market value can be higher than the price actually paid for the investments by TSG or its affiliates). The Manager, in accordance with the "Summary of Terms of the Fund," is entitled to charge an organization charge to each investor's capital account. Therefore, the Manager receives income, in addition to the fund fee, that is generated from the sale of interests with an underlying price per share of the Portfolio Company that is higher to the Fund than the price per share paid by affiliates of the Manager for such security. For example, if the Manager affiliate were to purchase ABC Co. shares at Ten Dollars ($10.00) per share, these shares may then be offered to the Fund at a higher "market value" price per share. For purposes of this example, assume such higher "market value" is Twelve Dollars ($12.00) per share. When an investor acquires Interests in the Fund they will generally be at this higher "market value," and thus, Investors acquire Interests at a price higher

than would be paid if they were to purchase shares of ABC Co. outside the Fund. Any profit made in connection with the sale at the higher "market value" will be received by the Manager's affiliates (and/or its beneficial owners) and will not be shared with the Fund or its Members.

**IN ADDITION, THE FUND MAY PURCHASE INTERESTS IN INVESTMENT FUNDS, SPECIAL PURPOSE VEHICLES AND OTHER INVESTMENT ENTITIES SPONSORED AND/OR CONTROLLED BY AFFILIATES OF THE MANAGER. TO THE EXTENT ANY AFFILIATES OF THE MANAGER ARE SPONSORS OF SUCH ENTITIES, THEY MAY ALSO RECEIVE A PROFITS INTEREST IN SUCH ENTITIES. THROUGH AFFILIATE RELATIONSHIPS, EMPLOYEES OR OFFICERS OF THE MANAGER MAY RECEIVE COMPENSATION FOR THE SALE OF INTERESTS OR SECURITIES BY THE FUND.**

**AFFILIATES OF THE MANAGER MAY ALSO RECEIVE INCOME GENERATED FROM THE SALE OF INTERESTS WITH AN UNDERLYING PRICE PER SHARE OF PORTFOLIO COMPANY SECURITY THAT IS HIGHER TO THE FUND THAN THE PRICE PER SHARE PAID BY THE AFFILIATE FOR SUCH SECURITY. NONE OF THE AFOREMENTIONED PROFITS SHALL BE SHARED WITH THE FUND. SEE "CONFLICTS OF INTEREST."**

*********

– **Portfolio Companies within the Fund's Investment Focus**. The TSG Vision Team, through its large network of associates, believes it may have a significant deal flow of companies within the Fund's investment focus that will be prime targets of the Fund's indirect investments. The Manager believes that the Fund will be able to acquire ownership interests in Portfolio Companies through such indirect investment purchases.

– **Significant Equity Holdings of Portfolio Company Stockholders**. The TSG Vision Team, through its large network of associates and companies within the Fund's investment focus, believes it may have access to stockholders of Portfolio Companies within the Fund's investment focus who are looking to liquidate their holdings in particular Portfolio Companies prior to an IPO. The Manager believes that the Fund will be able to acquire ownership or economic interests in Portfolio Companies through acquiring ownership or economic interests in the SPV.

– **Management of Entities with Similar Investment Focus**. The TSG Vision Team or their affiliates may manage other investment funds, special purpose vehicles and other entities that have a similar investment focus as the Fund. Such other investment funds and other investing entities may have already made investments in Portfolio Companies that are within the Fund's investment focus. The Fund may purchase membership or partnership interests in other investment funds and investment entities in order to take advantage of the upside of those funds' or entities' own investment portfolios. See "Conflicts of Interest." In addition to evaluating companies, secondary security interest purchase opportunities, and other investment funds, special purpose vehicles and other entities based on the factors enumerated above, the Fund will employ other investment strategies relating to the location, timing, and size of investments, which strategies the Fund believes may generate favorable returns on investments.

– **Exit Strategies.** The Fund generally will seek investment opportunities that it believes have a potential for liquidity within two to five years. With respect to its investment in a Portfolio Company or in other entities that have invested in Portfolio Companies, the Fund generally

has two potential successful exit strategies – sale or public offering. The Fund will seek to invest in the SPV which holds ownership interest in Portfolio Companies that it believes will generate significant returns through either of these exit strategies. Depending on market conditions, potential exits may include, without limitation, sales or mergers with a publicly traded company, sales or mergers with another private company, recapitalization of the business, or a spin-off or sale of individual business segments.

– **Portfolio Company Management**. The performance of the Fund's investments in the SPV will be dependent in significant part on the talent of the management team of the Portfolio Company held within the SPV. Given that strategic plans in the early stages of a company may change frequently, the Fund will seek to identify SPVs which hold assets of companies with management teams that it believes can execute on a market opportunity rather than a specific plan.

## SUMMARY OF THIS OFFERING

## TSG VISION FUND SERIES AI 1024

## LLC

Before purchasing an Interest in the Fund, you should carefully consider various risk factors and conflicts of interest described in this Memorandum, as well as the offering's suitability requirements, the restrictions on transfers and withdrawals of Interests and various legal, tax and other considerations which are discussed elsewhere in this Memorandum.

The following summary is qualified by reference to the other information contained elsewhere in this Memorandum, and by the Operating Agreement of the Fund attached as an Exhibit. You should read this entire Memorandum and the attachments carefully before making any investment decision regarding the Fund, and in addition you should consult your own advisors in order to fully understand the consequences of an investment in the Partnership. In the event of a conflict between this Memorandum and the Operating Agreement, the Operating Agreement will control.

**The Fund:** TSG Vision Fund Series AI 1024 LLC, a series of TSG Vision Fund LLC, a Delaware limited liability company.

**The Manager:** TSG Vision Fund Manager LLC, the Manager, is responsible for the day-to-day operations of the Fund. The Manager has the authority to (i) originate, analyze, and recommend investment opportunities to the Fund that are consistent with the purpose of the Fund, (ii) structure investments, identify funding sources of Portfolio Companies, supervise and document the acquisition, financing, and disposition of investments, (iii) monitor and evaluate investments, and (iv) provide such other services related thereto as the Manager may reasonably request. All investments of the Fund and acquisitions, dispositions and voting of securities by the Fund shall require the Manager's approval.

**The Offering:** The Fund is offering, through this Memorandum, its Interests on a private placement basis to investors who satisfy the eligibility standards described in this Memorandum. Persons whose subscriptions are accepted by the Fund will be admitted as members of the Fund ("**Members**"). Each Interest includes the right of that Member to all benefits to which a Member may be entitled pursuant to the Operating Agreement and under applicable law, together with all obligations of the Member to comply with the terms and provisions of the Operating Agreement and applicable law.

**Fund Investment:** The Fund has been formed for the sole purpose of purchasing, holding, and disposing of an investment in the SPV, and its underlying assets of the registered or unregistered Portfolio Company Securities. The Fund shall invest in the interests of SPV, affiliated with the Manager or its affiliates, whose underlying assets are comprised of the Portfolio Company. The Fund's investment in the SPV will take the form of a Simple Agreement for Future Equity ("**SAFE**"), issued at the Final Closing, defined below, and will be convertible into Portfolio Company Securities upon a Liquidity Event (additional details provided below). The interests in the SPV will constitute the only investments by the Fund. The activities of the Fund do not constitute a managed investment program. Investment in the Fund is designed only for sophisticated persons who are able to bear the total loss of their capital contribution to the Fund.

**Offering Frequency:** Interests will, at the sole discretion of the Manager, be issued in multiple closings (each, a "**Closing**"). The initial Closing ("**Initial Closing**") is expected to occur when the Minimum Raise has been met, or on the first anniversary of the Fund's Operating Agreement, dated October 7, 2024 whichever occurs first. The last date on which the Manager accepts new investments into the Fund shall be the "**Final Closing**" which shall occur no later than on the second anniversary of the Fund's Limited Liability

Company Operating Agreement or if the Fund has met its Expected Raise, whichever occurs first.

**Investment Minimum:** The minimum capital contribution ("**Capital Contribution**") of an investor in the Fund ("Member) is $25,000. The Manager reserves the right to waive this requirement in its sole discretion.

**Expected Capital Raise:** The expected capital raise of the Fund is $2,277,000.00 ("**Expected Raise**").

**Minimum Capital Raise:** The minimum capital raise of the Fund is $455,400.00 ("**Minimum Raise**").

**Investment Procedure:** Investors will be required to provide the Manager information sufficient to enable the Manager to verify the Investor's status as an accredited investor, as defined in Rule 501 of Regulation D under the Securities Act of 1933, as amended (the "**1933 Act**"). An eligible investor may subscribe for Interests by delivering to the Fund, as soon as possible prior to the Final Closing, properly completed and fully executed Subscription Documents, together with all required supporting documentation. Once made, subscriptions are irrevocable. All subscription amounts will be held in an account until the earlier of: (i) the acceptance by the Administrator of the Subscriber's Subscription Documents and satisfaction of the conditions of the Closing (collectively, the "**Closing Conditions**"); or (ii) the rejection by the Manager of the subscription or the termination of this Offering.

Upon the acceptance of a subscription by the Manager at the Closing the Subscriber will be admitted as a Member of the Fund and will have an Interest representing a proportionate share of the net assets of the Fund based on relative capital contributions of all Members at the time of the Closing. Ultimately, each Subscriber admitted as a Member will have an Interest representing a proportionate share of the net assets of the Fund based on the relative capital contributions of all the Members at all of the Closings, and will be determined as of the Final Closing.

Under the terms of the Subscription Documents and the Operating Agreement, Subscribers and Members may, from time to time, at the discretion of the Manager, be required to provide representations, documentation, instruments or information to facilitate a Closing, satisfy Closing Conditions, satisfy applicable anti-money laundering requirements and for certain other purposes.

**Acceptance/ Rejection of Subscriptions:** The Manager reserves the right to accept or reject any subscription, in whole or in part. The Manager will notify each Subscriber as to whether it has accepted its subscription. The Manager may, in its sole discretion, allocate Interests among Subscribers in any manner it determines.

**Fees and Expenses:** Affiliates of the Manager may receive inventory gains generated from the sale of Interests with an underlying price per share of a Portfolio Company security that is higher to the Fund than the price per share paid by the Manager's affiliate ("**TSG Market Value**"). The Broker-Dealer, TSG Capital Advisors, shall receive a commission for each transaction it completes for the Fund. Further, the Manager may also direct brokerage fees from the Fund to affiliated broker-dealers. See section "Risk Factors" and "Conflicts of Interest" below for additional information.

**Fund Operating Expenses:** The Fund accepts the obligation to pay any, or all, of the Fund Expenses, and will permit the Manager, or its affiliates or third-party designee, to auto-debit from its account (or otherwise will pay) such operating costs and expenses incurred by it or on its behalf. For the purpose of this Agreement, "Fund Expenses" shall mean operating

{S0180634.1}S

costs and expenses of the Fund including without limitation: (i) out-of-pocket expenses that are associated with disposing Portfolio Company Securities, including transactions not completed; (ii) extraordinary expenses, if any (such as certain valuation expenses, litigation and indemnification payments); (iii) interest on borrowed money, investment banking, financing and brokerage fees and expenses, if any; and (iv) expenses associated with the Fund's tax returns and Schedules K-1, all costs related to providing annual audited Fund financial statements and any certifications thereof, custodial, legal and insurance expenses, any taxes (other than taxes treated as Distributions), fees or other governmental charges levied against the Fund, (v) attorneys' and accountants' fees and disbursements on behalf of the Fund; (vi) insurance, regulatory or litigation expenses (and damages); (vii) expenses incurred in connection with the winding up or liquidation of the Fund; (viii) expenses incurred in connection with any amendments to the constituent documents of the Fund and related entities, including the Manager; (ix) expenses incurred in connection with the Distributions to the Members and in connection with any meetings called by the Manager; and (x) all other organizational and operating expenses of the Fund, including the formation of the Fund in the state of Delaware (excluding any regulatory expenses, or other costs incurred by the Manager in connection with its daily operations, including but not limited to salary and other payments to employees or officers of the Manager).

**Distributions / Liquidity Event; Carry to Advisor**

The Manager does not expect to make any distributions prior to the occurrence of a Liquidity Event (as defined immediately below).

A "**Liquidity Event**" will be deemed to occur upon the earliest of (a) the effectiveness of a registration statement filed by a Portfolio Investment with the SEC on Form S-1 with respect to identified shares of a Portfolio Investment held by the Fund, after any applicable Lock-Up Period, and then only after the Organizer or the Advisor, if applicable, determines in its sole discretion that liquidating the shares is in the best interest of the Fund; (b) a Merger Event, including a sale of all or substantially all of the assets, of a Portfolio Investment in which the merger consideration is comprised of (i) equity interests of the acquiring company which are registered under the Securities Act, or which are otherwise readily transferable, or (ii) cash or other readily transferable assets; (c) the bankruptcy, liquidation or dissolution of a Portfolio Investment; or (d) upon the Administrator, in its discretion, determining that the Portfolio Investment Securities and any other assets of the Fund in respect of the securities are freely or readily transferable, each as of the date that the consideration is received or the determination of transferability is made.

The Manager will determine the timing of distributions made by the Fund, including the timing of distributions from a Liquidity Event or a distribution from another special purpose vehicle or other entity in which the Fund has acquired an interest. If proceeds of such liquidation or distribution event are received by the Fund in cash or marketable securities, the Manager shall make distributions to the Members of the Fund no later than the first (1st) anniversary of such liquidation or distribution event.

Subject to tax distributions and withholding obligations, distributions from the Fund shall initially be apportioned among the Members that held a specific realized investment in proportion to their respective pro rata interest in such investment. Amounts initially apportioned to the Manager shall be distributed to the Manager, and amounts initially apportioned to any Member shall then be immediately reapportioned as between such Member on the one hand and the Manager on the other hand and distributed in the following order of priority:

(i) first, one hundred percent (100%) to each Member in proportion to its respective capital contribution, until each Member has received distributions equal to its respective unrecovered Capital Contribution; and

ii) thereafter, eighty percent (80%) to each Member in proportion to its respective Capital Contribution, and up to twenty percent (20%) to the Manager as a carried interest ("Carried Interest"), subject to the calculation as set forth below.

The Fund shall make tax distributions in cash to the Manager as an advance against future distributions in amounts intended to enable taxable members of the Manager to defray their income tax liability attributable to their participation in the Manager. Tax distributions shall be treated as advances against, and reimbursable from, future distributions to the Manager.

Prior to the termination or dissolution of the Fund, distributions will be in cash or marketable securities, as determined by the Manager. Non marketable securities or other non cash assets received by the Fund in connection with any investment will be retained by the Fund. Upon termination or dissolution of the Fund, distributions may also include in-kind distributions of non marketable securities or other assets of the Fund. The Manager will be entitled to withhold from any distribution to be made to a Member amounts (i) necessary to create, in the Manager's discretion, appropriate reserves for expenses and liabilities for the Fund, or (ii) owed by such Member, including any withholding taxes.

**Hurdle Rate:** The Hurdle Rate applicable to each Investor will be based on the total percentage return of the SPY, (an exchange-traded fund reflective of the S&P 500 index) during the holding period of an investors' investment in the Fund ("Holding Period"). The Holding Period begins at the time of each Investor's investment and ends at the date of a liquidity event when the Member's Interest in the Fund is converted to unrestricted shares or cash.

To determine the applicable Hurdle Rate, the Manager determines the correct "beginning point" of the investment. This is determined by using the average of the 52 week high and low closing prices of the SPY during the period that the respective Member has been invested. The average is determined by adding the SPY's 52 week high to its 52 week low and dividing by 2. For example, if an investor had invested in 2015, the SPY 52 week low of $187 is compared to the 52 week high of $212 and then divided by 2, which equals $199. The Manager will determine the "end point". If the investor receives shares in November 2020, the Manager will add the 2020 to-date SPY low of $309 to the 2020 to-date SPY high of $360 and divide by 2 which equals $334.

This represents a return of 67%, which is the hurdle rate used to calculate the appropriate carried interest.

For example:

1. Investor invests in ABC Corp. at $10 in 2015 with TSG. The Fund Manager will use the average SPY 52 week high and low closing price of $199.

In 2020 ABC Corp. has a liquidity event and investor will receive shares in November 2020 ABC Corp. is valued at $20 before carried interest is assessed.

The SPY 2020 to date SPY high and low closing price (determined by measuring SPY performance between January 1, 2020 and November 2020) averaged out is $334. Between 2015 and November 2020 the SPY returned 67%.

If investor had invested in the SPY the $10 would be valued at $16.70.

The carried interest assessed by the Fund Manager will be based on a price per share equal to $16.70, not $10

**Restrictive Agreements and Lockup:** The assets of the SPV, including the underlying Portfolio Company Securities, purchased by the Fund may be subject to restrictions on transfer and rights of first refusal in favor of a Portfolio Company, and will likely be subject to a lock-up by which the Fund would not be permitted to distribute the Portfolio Company Securities to Members for a period of 180 days or more following the effective date of an initial public offering of the Portfolio Company Securities(the "**Lock-Up Period**"), in accordance with applicable U.S. or non-U.S. laws, rules, and regulations.

**Allocations:** For tax purposes, profits and losses generally will be allocated among the Members so as to cause their respective capital accounts, with certain adjustments, to equal what each Member would receive as distributions if it were liquidated at book value and the proceeds distributed among the Members.

**Capital Account:** The Fund will establish and maintain a capital account ("**Capital Account**") for each Member. The Capital Account of a Member will be (i) increased by (a) the amount of all capital contributions by that Member to the Fund and (b) any profits (or items of gross income) allocated to that Member; and (ii) decreased by (a) the amount of any Losses (or items of loss) allocated to that Member and (b) the amount of any distributions to that Member. Capital Accounts will be maintained in accordance with U.S. federal income tax guidelines.

**Securities Laws:** The Interests will not be registered under the Securities Act. Offers of Interests will be made solely to investors that are Accredited Investors, and in some cases may also be required to be Qualified Clients.

**Investment Company Act of 1940:** The Fund intends to rely on the exemption from registration under the Investment Company Act of 1940, as amended (the "**Investment Company Act**") by reason of the exemption specified in Section 3(c)(1) (for issuers whose securities are beneficially owned by 100 or fewer investors. Only Accredited Investors will be admitted as Subscribers, and in some cases, the Subscribers may also be required to be Qualified Clients.

For the Fund to avoid classification as an "investment company" under the Investment Company Act, the Manager will limit ownership by any other investment company (even if it is exempt from the definition under Section 3(c)(1) of the Investment Company Act) to less than 10% of the outstanding Interests at the time that entity invests in the Fund. If such an entity subscribes for Interests, the Manager may limit, in its sole discretion, the Interest sold to that entity to less than 10% of the value of the total Interests after that entity's investment. If the entity's subscription is for a greater amount, the difference will, in the Manager's discretion, be rejected and refunded.

**Other Business Activities of Manager, and Advisor:** The Manager, for as long as it remains the Manager, will devote time to the Fund as is reasonably necessary to effectively manage its affairs. The Manager and the Advisor are not otherwise precluded from engaging in or pursuing, directly or indirectly, any interest in other business ventures of any kind, nature or description, independently or with others.

**Manager Not Exclusive:** The Manager is permitted to create and manage one or more subsequent funds having a substantially similar or other investment strategy without any notice or consent of the Members (a "**Subsequent Fund**").

**Exculpation and Indemnification:** None of the Manager, nor their respective members, managing members, shareholders, partners, employees, directors, officers, advisors, consultants, personnel or agents or affiliates (collectively, "**Indemnified Persons**") will be liable to the Fund or any Member any losses, liability, claims, damages or expense ("**Losses**") so long as (i) that Indemnified Person acted in good faith and believed that conduct was in the best interests of the Fund and (ii) that conduct did not constitute gross negligence,

willful misconduct, bad faith or fraud.

In addition, the Fund may pay the expenses incurred by the Indemnified Person in defending an actual or threatened civil or criminal action in advance of the final disposition of that action, *provided* that person agrees to repay those expenses if found by final adjudication not to be entitled to indemnification. The Fund may obtain insurance for (at the Fund's expense) the Indemnified Persons for any Losses except those attributable to conduct in the foregoing clause (ii).

**Transfer of Interests; Withdrawal of Members:**

An Investor may not directly or indirectly sell, transfer, assign, or encumber, in whole or in part, its Interest except for certain permitted transfers to affiliates, without the prior written consent of the Manager, which consent may be granted or withheld in the Manager's absolute discretion. The Fund will cooperate in facilitating transfers of Interests; however, no guarantee can be made that an Investor can exit the Fund before the Fund's maturity date, and no secondary market may exist for the transfer of such Interests. Other than as set forth above, a member will not have the right to withdraw from the Fund prior to its termination or dissolution, except in connection with a transfer of its Interest that has been approved by the Manager.

If the Manager determines in good faith that a Member has transferred an all or part of an Interest in violation of securities laws or has violated the provisions of the Operating Agreement relating to restrictions on transferability of an Interest (such Investor, a "**Defaulting Member**"), then the Manager may elect in its discretion to cause such Defaulting Member to transfer its Interest in the Fund to any person, including, without limitation, the Manager or any of its affiliates or appointees, for a transfer price equal to such Defaulting Member's aggregate capital account balance, in the discretion of the Manager, reduced by an amount up to seventy-five percent (75%). Additionally, the Defaulting Member shall in all instances pay the expenses incurred by the Fund in connection with any such transfer

**Dissolution:**

The Fund will dissolve and be liquidated upon the earliest of: (a) the end of the Term (unless the term is extended pursuant to the Operating Agreement); (b) the final distribution to the Members; (c) entry of a judicial decree of dissolution pursuant to Delaware law; or (d) the Organizer's sole discretion to dissolve the Fund. This is a summary of information relating to dissolution of the Fund. Please see additional information in the Operating Agreement.

In the event that on the ten-year anniversary of the Final Closing, a Liquidity Event has not yet occurred, then the Manager, at the Organizer's instruction, may extend the period of time between the date of the Final Closing and the Outside Date by unlimited successive one-year periods ("**Term**"). Alternatively, the Manager may appoint a third-party liquidator or custodian at the expense of the Fund and/or distribute the assets of the Fund to a liquidating trust or vehicle (a "**Liquidating Vehicle**") for the benefit of the Members. Interests in the Liquidating Vehicle will generally be subject to terms comparable to the Interests; provided that, in addition to other expenses contemplated in this Memorandum, interests in a Liquidating Vehicle may be subject to actual expenses incurred in connection with the ongoing operations of the Liquidating Vehicle. The Manager will have authority to make those adjustments or amendments to the terms of the Operating Agreement necessary to affect the terms of this paragraph.

On dissolution, the assets of the Fund will be liquidated by the Manager as promptly as possible; and after provision for all other debts and liabilities of the Fund (including those, if any, to Members), the remaining assets will be distributed to the Members in proportion to and in accordance with the Operating Agreement's provisions for distribution of distributable proceeds.

**Compulsory**

The Manager may, by notice to a Member, force the sale of all or a portion of that

**Redemption:**

Member's Interest on terms as the Manager determines to be fair and reasonable, or take other actions as it determines to be fair and reasonable in the event that the Manager determines or has reason to believe that: (i) the Member has attempted to effect a Transfer of, or a Transfer has occurred with respect to, any portion of that Member's Interest in violation of the Operating Agreement; (ii) continued ownership of that Interest by that Member is reasonably likely to cause the Fund to be in violation of securities laws of the United States or any other relevant jurisdiction or the rules of any self-regulatory organization applicable to the Manager, or its affiliates; (iii) continued ownership of that Interest by that Member may be harmful or injurious to the business or reputation of the Fund or the Manager, or may subject the Fund or any Members to a risk of adverse tax or other fiscal consequence, including without limitation, adverse consequence under ERISA; (iv) any of the representations or warranties made by that Member in connection with the acquisition of that Member's Interest was not true when made or has ceased to be true; or (v) that Member's Interest has vested in any other person by reason of the bankruptcy, dissolution, incompetency or death of that Member.

**Conflicts of Interest**

At times, the Fund will enter into transactions in which the Fund, or its related persons, will acquire an asset from, or sell an asset to, a person in which the Fund or a related person has a financial interest ("**Related Party Transaction**") without the approval of the Members. There are numerous potential conflicts of interest between the Fund and other investment funds, special purpose vehicles and other entities managed by the Manager or its affiliates. Investors are strongly encouraged to read the section of this Memorandum entitled "Conflicts of Interest" for a discussion of such potential conflicts of interest.

**Reports:**

The Fund will prepare and duly and timely file, at the Fund's expense, all tax returns required to be filed by the Fund. The Manager will send or cause to be sent to each Member the end of each Fiscal Year, or a later date as determined in the discretion of the Manager, information relating to the Fund as is necessary for the Member to complete its federal, state and local income tax returns that include that Fiscal Year.

Upon the Fund's fiscal year end, the Manager or Advisor will send each Member a copy of the Fund's unaudited financial statements.

**Confidentiality:**

A Subscriber's rights to access or receive any information about the Fund or its business will be conditioned on the Subscriber's willingness and ability to assure that the information will be used solely by the Subscriber for purposes of monitoring its Interest, and that the information will not become publicly available as a result of the Subscriber's rights to access or receive that information. Each Subscriber will be required to maintain information provided to it about the Fund or its business in confidence and not to disclose the information except in certain limited circumstances. The Manager will be entitled to withhold certain Fund information from Subscribers who are unable to comply with the Fund's confidentiality requirements. The Manager may limit the information that is made available to investors regarding the Portfolio Company or Portfolio Company Securities.

**Certain Tax Considerations:**

The Fund will be treated as a "partnership" for federal income tax purposes. As a partnership, the Fund generally will not be subject to U.S. federal income tax, and each Member subject to U.S. income tax will be required to include in computing its U.S. federal income tax liability its allocable shares of the items of income, gain, loss and deduction of the Fund, regardless of whether and to what extent distributions are made by the Fund to that Member.

**Employee Benefit Plans and ERISA Matters:**

Entities subject to the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), and other tax-exempt entities may purchase Interests. Trustees or Managers of those entities are urged to carefully review the matters discussed in

this summary. Investment in the Fund by entities subject to ERISA and other tax-exempt entities requires special consideration. Investment in the Fund is generally open to "*benefit plan investors*" (as defined in U.S. Department of Labor Plan Asset Regulation, 29 CFR 2510.3-101). However, it is the intention of the Organizer to conduct the operations of the Fund so that investment by Subscribers who are benefit plan investors will not equal or exceed twenty-five percent (25%) of the value of the Interests.

**Risk Factors:** An investment in the Fund and the Fund's investment strategy involves significant risks, including those associated with investments in the Fund's and the Portfolio Company's targeted industry and markets. An investment in the Fund is speculative and involves a high degree of risk. An investor could lose all or a substantial amount of the investor's investment in the Fund. The Fund's performance may be volatile and is suitable only for persons who can afford fluctuations in the value of their capital. The Fund constitutes an illiquid investment and is suitable only for persons who have limited need for liquidity and who meet the suitability standards set forth in this Memorandum. There is no assurance that the Fund will be successful or that its investment objective will be achieved. No secondary market for the Interests is expected to develop, and there are severe restrictions on an investor's ability to withdraw and transfer Interests. The Fund has limited liquidity. See "Investment Considerations" in this Memorandum for a detailed list of risk factors.

Each potential investor should not construe the contents of this Memorandum as legal, tax, investment or other advice. Each recipient should carefully review this Memorandum and obtain the advice of legal, accounting, tax and other advisors in connection therewith before deciding to invest in the Fund.

**Investments by Non-U.S. Investors:** Investments from non-U.S. investors are permitted.

**Amendments:** The terms of the Operating Agreement may generally be amended (i) with respect to amendments that affect the entire Fund, with the approval of both the Manager and the Members. The Manager may make certain limited types of amendments to the Operating Agreement; including administrative amendments that do not prejudice Members, without the consent of the Members.

**Portfolio Company Disclosure Material:** Members have not been provided significant information relating to the Portfolio Company as part of this Offering. Investors will be required to acknowledge and represent that they are subscribing for Interests based on their own assessment and knowledge of the Portfolio Company and the Portfolio Company Securities.

**No Voting Rights:** Members will not have management rights. Members will not have voting rights except under the limited circumstances expressly provided in the Operating Agreement.

**Proxy Voting Policy:** The Manager, at the direction of the Organizer, will exercise proxy voting authority on behalf of the Fund. In exercising its proxy voting authority, the Manager expects to vote with the majority of other holders of the Portfolio Company Securities.

**Shareholder Rights:** The Organizer will not be obligated to exercise any shareholder rights with respect to a Portfolio Company and Portfolio Company Securities such as pre-emptive rights, co-sale rights, tag-along rights, etc., but may choose to do so on behalf of the Members at the discretion of the Organizer. The Manager or the Organizer may choose to assign those rights to another entity for the benefit of the Members in its discretion.

## THE MANAGER

The Manager of the Fund is TSG Vision Fund Manager LLC, a Delaware limited liability company (the "**Manager**"). The Manager will be responsible for the day-to-day operations of the Fund and will be responsible for investment of the Fund's assets. The Manager will (i) originate, analyze, and recommend investment opportunities to the Fund that are consistent with the purpose and investment focus of the Fund pursuant to the directions of the Advisor, (ii) structure investments, (iii) identify funding sources for Portfolio Companies, (iv) supervise the preparation and due diligence review of documentation relating to the acquisition, financing, and disposition of investments, (v) monitor investments, and (vi) provide such other services related thereto as it may reasonably deem necessary.

All investments of the Fund, and all acquisitions, dispositions and voting of securities by the Fund shall require the approval of the Manager.

TSG Vision Fund Manager LLC is headquartered in Ronkonkoma, NY. Through its network of high net worth individuals and institutions, the Manager provides funding for an array of private companies, including social media, digital media, and other technology companies.

Affiliates of the Manager have been involved in investments in such companies as Spotify, SpaceX, Palantir Technologies, SoFi, Airbnb, Kraken, Epic Games, Stripe, and Anduril Industries.

## CONFLICTS OF INTEREST

The Fund is subject to various conflicts of interest arising out of its relationship with the Manager, the SPV, TSG Alpha, and the broker-dealer assisting with distribution of Fund interests ("Broker-Dealer"), and those entities' respective personnel, members, managers or affiliates. Andrew Spaventa (the "Principal") is the primary owner of the Manager, the SPV, TSG Alpha, and the Broker-Dealer. None of the agreements and arrangements between the Fund, the SPV, the Manager, TSG Alpha, and the Broker-Dealer, including those relating to compensation, resulted from arm's length negotiations. In addition, no assurances can be made that other conflicts of interest will not arise in the future. Such conflicts include, but are not necessarily limited to, the following:

Related Entities. TSG Alpha Partners LLC ("TSG Alpha" or the "Advisor"), a Delaware limited liability company, is an advisor to the Fund. Pursuant to an investment advisor agreement (the "Investment Advisor Agreement"), TSG Alpha will advise the Manager on (i) originating, analyzing, and recommending investment opportunities to the Fund that are consistent with the purpose and investment focus of the Fund pursuant, (ii) structuring investments, (iii) identifying funding sources for the SPV, (iv) supervising the preparation and due diligence review of documentation relating to the acquisition, financing, and disposition of investments, (v) monitoring investments, and (vi) provide such other services related thereto as it may reasonably deem necessary.

TSG Capital Advisors LLC will act as the placement agent for the fund. All investments of the Fund, and all acquisitions, dispositions and voting of securities by the Fund shall require the approval of the Manager.

TSG Invest Ventures LLC, a Delaware limited liability company, is the entity which shall purchase interests in the Portfolio Company. TSG Invest Ventures LLC shall (i) purchase Portfolio Company Securities; (ii) assign its interests in the Portfolio Company to SPV; and (iii) upon a Liquidity Event, shall release all interests it has in the Portfolio Company and Portfolio Company Securities to the SPV.

TSG VENTURES SPV AI 1024 LLC, a Delaware limited liability company, is the SPV which will hold the underlying interests in the Portfolio Company. TSG VENTURES SPV AI 1024 LLC shall, upon a Liquidity Event, issue to the Fund the right to certain Portfolio Company Securities held as assets by the SPV.

Obligations to the Fund, Other Funds, and Separate Accounts. There are numerous conflicts and potential conflicts of interest between the Fund, other funds ("Other Funds") managed by the Manager and/or advised by TSG Alpha, and the separate accounts managed by TSG Alpha, a registered investment advisor and an affiliate of the Manager, with respect to the allocation of potential investment opportunities. Certain investment opportunities could be appropriate for the Fund, the Other Funds, or such separate accounts managed by TSG Alpha, or for co-investment by the Fund and such other separate accounts. In addition, neither the Manager, TSG Alpha nor any of their respective affiliates are obligated to share any investment opportunity with the Fund that the Manager believes, in its discretion and based on its reasonable business judgment, does not satisfy the Fund's investment criteria. Conflicts of interest between the Fund, the Other Funds, and their respective affiliates, special purpose vehicles or other entities managed by the Manager or its affiliates will be resolved by the Manager in the Manager's sole discretion, and in certain instances may have an adverse impact on the Fund and its ability to achieve its investment objective.

Payment of Certain Fees. The Manager, the SPV, TSG Alpha, TSG Capital, and the Broker-Dealer are wholly-owned by subsidiaries of the Principal. The Fund will pay fees and expenses to the Manager (which will receive Carried Interest), TSG Alpha (which will receive the Investment Advisor Fee), and will pay commissions to the Broker-Dealer relating to the distribution and sale of the Fund membership interest that were not necessarily determined on an arm's length basis. The Principal will benefit from the receipt of Carried Interest, Investment Advisor Fee, and brokerage commissions. None of the aforementioned fees and compensation to the Manager, TSG Alpha, TSG Capital, and the Broker-Dealer, or Principal will be shared with the Fund.

Effect of Fees and Expenses on Returns. The Fund will pay the Investment Advisor Fee and will bear the expenses related to its operations, including third-party costs and expenses. Such fees and expenses will reduce the actual returns to Members. Fees and expenses will be paid regardless of whether the Fund produces positive investment returns. If the Fund does not produce significant positive investment returns, these fees and expenses will reduce the amount of the investment recovered by a Member to an amount less than the amount invested in the Fund by such Member. Such fees and expenses will result in greater expense to the Members than if the Members were able to invest directly in a Portfolio Company without the assistance of the Manager or the Fund. To the extent any such costs or expenses are paid by the Manager, TSG Alpha or their respective affiliates, as the case may be, such costs and expenses shall be reimbursed by the Fund.

Legal Representation. A number of law firms represent the Manager and/or their respective affiliates from time to time in a variety of different matters. None of these law firms represent investors in connection with matters relating to the Fund or its investments. These law firms represent the Manager, including with respect to their duties in relation to the Fund. Such counsel will not, however, be acting as counsel for the investors in the Fund. Furthermore, in the event a conflict of interest or dispute arises between the Manager and TSG Alpha, on the one hand, and one or more investors, on the other hand, it will be accepted that counsel to the Manager and TSG Alpha is not counsel to the investors, notwithstanding the fact that, in certain cases, such counsel's fees are paid through or by the Fund (and therefore in effect by the investors).

Documents relating to the Fund are technical in nature. The law firms have represented the interests of the Manager (and not the investors in the Fund) in connection with the formation of the Fund and the offering of interests therein, and will not represent the interests of the investors in the organization and operation of the Fund. Accordingly, the investors are urged to consult with their own legal counsel before investing in the Fund.

Conflicts of interest may exist with respect to how investments in Portfolio Companies are allocated by the Manager. Such conflicts will be resolved by the Manager in its sole discretion. Conflicts of interest between the Fund, its affiliates and other investment funds, special purpose vehicles or other entities managed by the Manager or its affiliates will be resolved by the Manager in its sole discretion, and in certain instances may have an adverse impact on the Fund and its ability to achieve its investment objective.

Affiliates of the Manager may also benefit from the Fund's purchase of Core Holdings with an underlying price per share of the Portfolio Company security that is higher to the Fund than the price per share paid by the affiliate for such security.

None of the aforementioned profits shall be shared with the Fund.

In addition, members, managers, officers or employees of the Manager or the respective affiliates thereof, may serve as directors and/or officers of Portfolio Companies.

Conflicts of interest may exist with respect to how investments in Portfolio Companies are allocated by the Manager. Such conflicts will be resolved by the Manager in its sole discretion. Conflicts of interest between the Fund, its affiliates and other investment funds, special purpose vehicles or other entities managed by the Manager or its affiliates will be resolved by the Manager in its sole discretion, and in certain instances may have an adverse impact on the Fund and its ability to achieve its investment objective.

## OPERATING AGREEMENT

The Fund has been established as a limited liability company in Delaware. The controlling terms and conditions of the Fund are contained in the Operating Agreement, which is attached to the Subscription Booklet of which this Memorandum is a part as Exhibit B. The Operating Agreement shall determine the rights of the Members and the obligations of the Manager.

**In the event of a conflict between this Memorandum and the Operating Agreement, the Operating Agreement shall control.**

**Potential investors shall have the opportunity to meet with representatives of the Manager to ask any and all questions relating to an investment in the Fund. Additionally, potential investors are encouraged to read and review the Fund's Operating Agreement in its entirety. Further, potential investors may wish to consult with their own legal and tax counsel in order to make an informed decision regarding an investment in the Fund.**

## RISK FACTORS

THE RISKS ASSOCIATED WITH THE FUND AND THE FUND'S INTENDED INVESTMENT ARE SUBSTANTIAL. PROSPECTIVE INVESTORS MUST RELY ON THEIR OWN EXAMINATION, INVESTIGATION AND EVALUATION OF THE FUND, AND THE MERITS AND RISKS INVOLVED.

THE INVESTOR ACKNOWLEDGES AND AGREES THAT THEY ARE A SOPHISTICATED INVESTOR CAPABLE OF PERFORMING THEIR OWN INDEPENDENT DUE DILIGENCE, RESEARCH, AND ANALYSIS AND HAS COMPLETED THEIR OWN INDEPENDENT DUE DILIGENCE, RESEARCH, AND ANALYSIS IN CONNECTION WITH AN INVESTMENT IN THE FUND. THE INVESTOR FURTHER CONFIRMS THEY ARE RELYING SOLELY UPON THEIR OWN INDEPENDENT DUE DILIGENCE, RESEARCH, AND ANALYSIS IN MAKING ANY DECISION TO INVEST IN THE FUND INTERESTS. THE INVESTOR HAS NOT RELIED UPON ANY INFORMATION OTHER THAN THAT WHICH HAS BEEN PROVIDED IN WRITING BY THE ISSUER OF INTERESTS NOR UPON ANY RECOMMENDATION FROM THE MANAGER, TSG ALPHA, OR THEIR RESPECTIVE ASSOCIATED PERSONS AND/OR AFFILIATES. THE INVESTOR AGREES TO INDEMNIFY AND HOLD MANAGER, TSG ALPHA, OR THEIR RESPECTIVE ASSOCIATED PERSONS AND/OR AFFILIATES HARMLESS FROM ANY LOSSES OR DAMAGES THAT MAY RESULT FROM THE PERFORMANCE OF AN INVESTMENT IN THE INTERESTS IN THE FUND.

An investment in the Fund involves a high degree of risk as a result of both (i) the types of investments expected to be made by the Fund and (ii) the structure of the Fund. There can be no assurance that the investment objectives for the Fund will be achieved or that there will be any return of capital to investors. Before investing in the Fund, prospective investors should consider the risks inherent in the investment carefully, including the following:

**Conflicts of Interest** - There are conflicts of interest and potential conflicts of interest in connection with the Fund, the principals of the Fund, and their respective affiliates, all of which may have an adverse impact on the Fund and its ability to achieve its investment objective. Potential investors are urged to consider these potential conflicts of interest in their investment decision in the Fund. See "Conflicts of Interest."

**Risks Related to the Fund** - Investment in the Fund presents certain risks, of which potential investors should be aware.

***General*** **-** The Fund will be subject to numerous risks generally related to investing in securities and other investments, including potentially, the additional risks associated with investing in nonmarketable securities and non-public companies, including, as applicable, through a special purpose vehicle. Many of the risks associated with an investment in the Fund will also apply to the Fund's investment in the SPV. The securities or other interests acquired by the Fund will have restrictions on resale and, even in the absence of such restrictions, may not be marketable. The ability of the Fund to profit from its investments will be highly dependent upon the ability of its investments to generate income or appreciate in value. Numerous factors may impede or prevent an investment from reaching this point, including inadequate capital, unfavorable competitive developments, and adverse legislation at the national, state, or local level. The Fund may face significant capital shortfalls for a wide variety of reasons. For example, resource development may prove more expensive, or take more time, than anticipated, and the growth in revenues may be slower than expected. In any such event, the Fund may be asked to provide additional capital. If the Fund is unable or refuses to provide the additional capital, the investment may obtain the needed funds from another source, diluting, potentially substantially, the earlier investment by the Fund. However, in the event that an investment is unable to obtain any needed financing, the inability to obtain funds may result in the failure of such investment and a loss to the Fund.

***Failure to Meet Minimum Raise / Opportunity Cost*** **–** There is no assurance that any or all of the interests in the Fund will be sold or meet the Minimum Raise. As such, Members may risk foregoing potential returns from other investments by investing in this Fund.

***No Assurance of Profit, Cash Distributions or Appreciation* -** There is no assurance that an investment in the SPV or other entity whose portfolio consists of Portfolio Companies, once made by the Fund, will be profitable or that the Fund's interest in such Portfolio Company or other fund, special purpose vehicle or entity will have economic value. There is no assurance that the Fund's investments will be profitable and there is a substantial risk that the Fund's losses and expenses will exceed its income and gains. In addition, the Manager may be required to advance non-refundable deposits on certain investments that may be forfeited if such transactions are not consummated. Consequently, there can be no assurance that the Fund's investments will result in distributions to the Members, or that the Fund will be able to liquidate its investments on favorable terms.

***Affiliate Fees* -** TSG Alpha, which is affiliated with the Manager and Broker-Dealer though common ownership, will receive an Investment Advisor Fee for the services provided. The Investment Advisor Fee will be paid to TSG Alpha regardless of whether the Fund Interests appreciate or decline in value. Note that the Manager will not receive any separate regular fee in exchange for management of the Fund (but the Manager is entitled to receive Carried Interest as described in this Memorandum and the Operating Agreement).

The Fund will use TSG Capital Advisors, a broker-dealer, whose ultimate beneficial owner is Mr. Spaventa, and which is affiliated with the Manager and TSG Alpha through common ownership, to sell and distribute membership interests of the Fund. In connection with those sales and distribution activities, the Broker-Dealer and its registered representatives will receive compensation in the form of commissions. Those commissions will not be shared with the Fund.

While the Manager is primarily tasked with managing the Fund's investments, the Manager may also cause certain of its affiliates to purchase interests in portfolio companies that it has identified, either directly or indirectly through special purpose vehicles, on behalf of the Fund. The Manager will thereafter cause the Fund to purchase these investments at a time determined by the Manager. This time period may range from immediately after the initial purchase of such investment to a date closer to a liquidity event in the Fund. When determining the price of the interests to be sold to the Fund, the Manager derives a market value using a combination of several metrics (including appreciation) that it employs in its pricing mechanism (such market value will typically be higher than the Manager's purchase price). Therefore, the Manager expects to receive income that is generated from the sale of interests with an underlying price per share of the portfolio company that is higher to the Fund than the price per share paid by the Manager or Manager's affiliate for such security.

***Limited Operating History.*** The Fund, and the Manager were formed specifically to operate the Fund and its investment activities. The Fund and Manager have limited operating history upon which a prospective Member may evaluate to determine whether to purchase an Interest in the Fund. The SPV, and its underlying interests in Portfolio Company(ies), may be newly established with little to no operating history or have limited public information available upon which the Manager may rely prior to making an investment. As a result, no prior or limited performance or results of the SPV, or the Portfolio Company(ies), can be relied upon or expected to be indicative of how either will perform. The Fund will be dependent upon the Manager, which in turn will rely on its personnel. No guarantees can be made that the Manager and its personnel will be able to operate effectively or that the respective efforts of such persons will be beneficial to the Fund. Moreover, no assurance can be made that any or all of such persons will remain employed by the Manager.

***Limited Experience of Manager.*** The Manager has limited experience managing and advising private funds like the Fund, and may not successfully or effectively manage the Fund. Their limited experience in dealing with the increasingly complex laws pertaining to private fund activities in securities markets could result in the Fund underperforming compared to expectations.

***Dependence on Key Personnel***. The Fund is highly dependent on the diligence and skills of the principals, officers and employees of the Manager, TSG Alpha, and their respective affiliates. The Manager and TSG Alpha are dependent on the services of its principals and key personnel, including Andrew Spaventa. The success of the Fund depends to a great extent on the investment skills and continued service of the Manager's and TSG Alpha's principals and key personnel. There can be no assurance that Andrew Spaventa or any other principals or key personnel will continue to be associated with the Manager and its affiliates. The Fund could be adversely affected if, because of illness, resignation, or other factors, the services of the relevant people

were not available for any significant period of time.

***Limited Liability of the Manager.*** A provision has been made in the Operating Agreement that the Manager will not be liable to the Fund, except for monetary damages sustained by the Fund resulting from the Manager's acts that were not taken in good faith, acts that were not taken in the reasonable belief that such acts were in the best interests of the Fund, or intentional misconduct, or knowing violation of law. In addition, the Operating Agreement provides for indemnification by the Fund of the Manager and its agents for liability resulting from errors in judgment or certain acts or omissions, whether or not disclosed. Therefore, a Member may have a more limited right of action against the Manager than such Member would have had absent these provisions

***Risks Related to the underlying SPV Holdings* –** The SPV and its underlying interests in the Portfolio Companies in which the Fund invests (directly or indirectly) may be in a conceptual or early stage of development, may not have a proven operating history, may offer services or products that are not yet developed or ready to be marketed or that have no established market, maybe operating at a loss or have significant fluctuations in operating results, may be engaged in a rapidly changing business, may require substantial additional capital to support their operations, to finance expansion or to maintain their competitive position, or otherwise may have a weak financial condition.

Portfolio Companies may face intense competition, including competition from companies with far greater financial resources, more extensive development, technological, marketing, and other capabilities, and a larger number of qualified managerial and technical personnel.

***Equity Securities***. The value of the equity securities held by the Fund is subject to market risk, including changes in economic conditions, growth rates, profits, interest rates and the market's perception of these securities. While offering greater potential for long-term growth, equity securities are more volatile and more risky than some other forms of investment.

***Availability of Investment Opportunities* -** The market for the kinds of investments contemplated by the Fund is limited and competitive, and may become even more competitive in the future. Identifying attractive investment opportunities is difficult and involves a high degree of uncertainty. Moreover, certain investments may from time to time be oversubscribed, and it may not be possible to make investments that have been identified as attractive opportunities.

***Lack of Control of Portfolio Companies; Minority Investment* -** The Fund expects that it will hold, in the case of its investment in the SPV, indirect interests in such Portfolio Companies. Therefore, the Fund may be limited in its ability to protect its investments. Generally, as a condition to any direct investment in a Portfolio Company, the Fund expects to seek to obtain special rights and protective provisions, which will be negotiated at the time of the investment. However, there can be no assurance that the Fund will be able to obtain such protective provisions or, if such provisions are obtained, that they will be effective.

***Dilution Risk***. The Fund's indirect interest in the Portfolio Company(ies) may be subject to direct and/or indirect dilution. The Fund does not intend to reserve capital for follow-on investments in the Portfolio Company(ies) and therefore may be unable to take advantage of attractive follow-on or other investment opportunities or to protect its existing investments from dilutive events. Therefore, if the Fund's investment is diluted, the Fund's investment(s) may depreciate in value. If the Portfolio Company(ies) grants options (or similar rights to acquire membership interests) to employees, service providers, or certain other parties or individuals then the Fund's investment(s) may be subject to dilution.

***Reliance on Management of Portfolio Companies* -** There can be no assurance that the management of a Portfolio Company will be able to operate its company successfully.

***Investments in Economic Interests of Securities of Portfolio Companies* -** From time to time, the Manager or an affiliate thereof may, as a result of certain transfer restrictions (including time-based rights of first refusal) on a particular target security in a Portfolio Company, purchase an economic interest in such security or enter a forward purchase contract pertaining to such security pending the termination or expiration of the transfer restrictions thereon. Prior to expiration or termination of the restrictions, the Manager or an affiliate thereof will hold the interest for the sole benefit of the Fund. Once the transfer

restrictions expire or are terminated, the record ownership of such securities will be transferred to the Fund.

***Investments in Economic Interests of Securities of Portfolio Companies -*** From time to time, the Manager or an affiliate thereof may, as a result of certain transfer restrictions (including time-based rights of first refusal) on a Portfolio Company, purchase an economic interest in such security or enter a forward purchase contract pertaining to such security pending the termination or expiration of the transfer restrictions thereon. Prior to expiration or termination of the restrictions, the Manager or an affiliate thereof will hold the interest for the sole benefit of the Fund. Once the transfer restrictions expire or are terminated, the record ownership of such securities will be transferred to the Fund.

***Securities Regulations Concerning Private Placements -*** The Fund expects to invest in securities that are not registered under the Securities Act. The Fund will purchase such securities in reliance upon an exemption from registration pursuant to the provisions of the Securities Act including those provided by Regulation D. Unless such securities are subsequently registered under the Securities Act, they will not be offered or sold except pursuant to an exemption therefrom, or in a transaction not subject to, the registration requirements of the Securities Act and any other applicable securities law. Therefore, securities purchased pursuant to such exemptions including Regulation D are illiquid.

***Dependence on Public Offering*** **Market -** The investment strategy of the Fund is based in large part upon the state of the securities markets in general and the market for IPOs in particular. Changes in the securities markets and general economic conditions, including economic downturns, fluctuations in interest rates, the availability of credit, inflation, and other factors may affect the value of investments of the Fund. The market for public offerings is cyclical in nature and, accordingly, there can be no assurance that the securities markets will, at any point in time, be receptive to public offerings, particularly those of social media, digital media, life science and cleantech companies. Any adverse change in the market for public offerings could have a material adverse effect on the Fund and could severely limit the Fund's ability to realize its investment objective.

***Possible Need for Additional Investments in the SPV -*** Following its initial investment in a the SPV, the Fund may make additional investments in such SPV ("Additional Investments") in order to increase its investment in the SPV believed to be successful, to exercise warrants, options, or convertible securities that were acquired in the initial financing, to preserve the Fund's proportionate ownership when a subsequent financing is planned, or to protect the Fund's initial investment when such SPV's performance does not meet expectations.

***High-Risk Investments -*** The Fund's investment(s) will contain high-risk investments in unseasoned companies with limited operating history and which may experience significant losses for some time after the Fund's investment. The Fund's investment(s) will be difficult to value. The return to Members on their investments is contingent on the growth and prosperity of the Fund's portfolio investments. The success of these companies will be subject to factors over which the Fund will have little or no control, including the availability of subsequent financing, the rapid pace of technological change, market shifts (including the entry of competitors with greater resources or development of competing products or other changes in the demand for a companies' products and services), changes in relevant governmental regulations and changes in the economy generally. Consequently, the Fund's investments are highly speculative. In some cases, the profitability of a portfolio company may also depend on a portfolio company's ability to develop and protect intellectual property, and there can be no assurances that they will be successful in securing patent, copyright or other legal protection (or that such legal protection will be available) for their products, know-how or other intellectual property. Such investments are generally highly illiquid in nature. Resale of securities in which the Fund invests will generally be restricted by applicable securities laws, and there will generally be no public market for such securities. There can be no assurance that an interest in any portfolio investment will earn a return or that the returns on successful investments will be sufficient to permit returns to the Members

***Illiquidity of Investments -*** The investments made by the Fund will consist primarily of securities that are subject to restrictions on resale because they were acquired from the issuer in private placement transactions or because the Fund is deemed to be an affiliate of the issuer. Generally, these securities

cannot be sold publicly unless and until the issuer is a public company and then only with the expense and time required to register the sale transaction under the 1933 Act or pursuant to rules under the 1933 Act, which permit only limited sales under specified conditions. In addition, other legal, contractual, or practical limitations may limit the Fund's ability to sell investments in Portfolio Companies or other investment funds, special purpose vehicles or other entities in which it has purchased an interest. For example, the issuers may be privately held, the Fund may own a relatively large percentage of the issuer's outstanding securities or may have agreed to contractual restrictions on resale, or other investors, financial institutions or management may be relying on the Fund's continued investment. Sales also may be limited by financial market conditions, which may be unfavorable for sales of securities of particular issuers or issuers in particular markets. In particular, the public market for social media, digital media, life science and cleantech companies is and may remain extremely volatile. Such volatility may adversely affect the development of Portfolio Companies, the ability of the Fund to dispose of investments, and the value of investment securities on the date of sale or distribution by the Fund. In particular, the receptiveness of the public market to IPOs by the Portfolio Companies may vary dramatically from period to period. An otherwise successful Portfolio Company may yield poor investment returns if it is unable to consummate an IPO at the proper time. Even if a Portfolio Company effects a successful public offering, the Fund or the Portfolio Company's securities may be subject to contractual "lock- up," securities law or other restrictions that may, for a material period of time, prevent the Fund or its Members from disposing of such securities. Similarly, the receptiveness of potential acquirers to the Fund's Portfolio Companies will vary over time and, even if a Portfolio Company investment is disposed of via merger, consolidation or similar transaction, the Fund's stock, security, or other interests in the surviving entity may not be marketable.

Finally, although the Manager will periodically perform valuations of the Fund's assets, other information concerning the value of the assets may not be available, and it may not be possible to obtain up-to-date valuations at all times.

***Concentration of Investments -*** The Fund was structured to permit a concentrated investment position(s) within the Fund's portfolio. The performance of the Fund will be tied directly to and affected by the value of the SPV, which, in turn, will be directly tied to and affected by the value of the Portfolio Company(ies). The Portfolio Company is a private emerging company. As such, the value of the Fund may be subject to greater volatility than funds with portfolios that are less concentrated. Many such companies go out of business every year and it is difficult to know whether companies will grow, if at all, or what factors may impact their performance. There can be no assurance that the Fund will be adequately compensated for risks taken and it is possible for a Member to lose their entire investment. It is also difficult to understand the timing of profit realization and it is likely that the Fund will incur losses before it has an opportunity to realize a profit, if at all.

***Lack of Information for Monitoring and Valuing the Investment -***The Manager may only be able to obtain limited information about the Portfolio Company(ies) and, in some cases, may not be able to obtain information beyond the information that is publicly available. Generally, the Portfolio Company(ies) will determine the best way to keep the investment community informed on the progress of the business so the Manager may not be aware of any adverse changes that have occurred with respect to certain of its investments. Additionally, privately held companies are not subject to the same disclosure and reporting obligations of publicly traded companies. The value of the Portfolio Company(ies) could be significantly negatively affected by any such event. Further, the Manager may have to make valuation determinations without the benefit of an adequate amount of relevant information. Prospective investors should be aware that as a result of these difficulties, as well as other uncertainties, any valuation made by the Manager may not represent the fair market value of the Portfolio Company(ies) or the Interests. The Manager does not assume any responsibility for the accuracy of completeness of such information

***Uncertain Exit Strategies -*** Due to the illiquid nature of many of the investments the Fund expects to make, the Manager is unable to predict with confidence what, if any, exit strategy will ultimately be available for any given investment. Exit strategies that appear to be viable when an investment is initiated may be precluded by the time the investment is ready to be realized due to economic, legal, political, or other factors. For example, there may not be an active market for IPOs of securities, so the

Fund may not be able to realize an exit through the public markets.

***Service on Board of Directors, Management Team, Etc.*** **-** Individual members, officers or employees of the Manager or the respective affiliates thereof, may serve as officers and/or directors of Portfolio Companies in which the Fund has made a direct investment. In their capacity as officers or directors, such individuals may become subject to fiduciary or other duties that adversely affect the Fund. For example, the Fund may be unable to sell or otherwise dispose of portfolio securities if one of the aforementioned individuals is in possession of inside information relating to the issuer of such securities. Nevertheless, the Operating Agreement of the Fund will not preclude members, officers or employees of the Manager or the respective affiliates thereof, from serving as officers and/or directors of the SPV or Portfolio Companies. Conversely, the Operating Agreement will not require that members, officers or employees of the Manager or the respective affiliates thereof, serve as officers and/or directors of the SPV or Portfolio Companies, and there can be no assurance that the Manager will have a legal right to influence the management of the SPV or the Portfolio Company. In addition, there can be no assurance that the Fund will have any ability to influence the management of such SPV or Portfolio Companies. Any compensation (including salaries, equity, and other compensation) received by members, officers or employees of the Manager or the respective affiliates thereof, in relation to their service as a director and/or officer of a SPV or Portfolio Company will not be shared with the Fund, nor will such amounts reduce the Carried Interest due to the Manager, respectively.

***Risks Related to SAFEs***. SAFEs are inherently risky like convertible notes but may be less favorable for the investor. A SAFE is an agreement that grants the holder the right to equity at a later date, similar to a convertible note, but with three (3) key legal differences: (1) unlike a convertible note which is a debt instrument, a SAFE is neither a debt nor equity but a security that may convert to equity at a later date and does not possess voting rights until conversion; (2) debt instruments typically have maturity dates, while SAFEs do not; and (3) debt instruments have interests rates, while SAFEs do not. Despite the name implying otherwise, SAFEs are an investment vehicle and, like any investment vehicle, are inherently risky. There is not now, and likely will not be a public market for the SAFE. The SAFE will not be freely transferrable. The SAFE may never convert to equity. The SAFE has not been registered under federal or state securities laws, leading to an absence of certain regulation. Upon a liquidity event or dissolution, the SAFE will be subordinate to payment of outstanding indebtedness and creditor claims, including contractual claims for payment and convertible notes.

**<u>Risks Relating to the Structure of the Fund</u> -** The structure of the Fund presents certain risks, of which potential investors should be aware:

***Long-term Commitment Required; Penalty for*** **Default -** A commitment to the Fund is a long-term investment. The Fund's offering is open-ended with no set size and end date. Although the Fund expects to make distributions prior to its termination, there can be no assurance as to the amount or timing of any such distributions. Because of the lack of a public market for Interests in the Fund and restrictions on transfer of Interests, Members should be willing to hold their Interests until the liquidation of the Fund, without an expectation of distributions for a period of years. See "– Illiquidity; Restrictions on Transfer and Withdrawal" below.

***Illiquidity; Restrictions on Transfer and Withdrawal*** **-** An investment in the Fund will be highly illiquid. Except in certain very limited circumstances described in "Summary of Terms of the Fund – Transferability" above, Members will not be permitted to transfer their Interests in the Fund without the prior written consent of the Manager, which may be granted or withheld in its sole discretion. The transferability of Interests in the Fund will also be subject to certain restrictions contained in the Operating Agreement and restrictions on resale imposed under applicable securities laws. Transferees of Interests in the Fund must be "accredited investors" within the meaning of Rule 501 of Regulation D of the 1933 Act. Although the Manager will periodically perform valuations of the Fund's assets, other information concerning the value of an Interest in the Fund may not be available, and it may not be possible to obtain up-to-date valuations at all times. There will be no public market for Interests in the Fund. Members may not withdraw from the Fund without the consent of the Manager, which may be granted or withheld in its sole discretion.

***Reliance on the Manager; Lack of Control by*** **Members -** The Manager will have operational and

investment authority. Members will not have the ability to select, veto or cause the sale or other disposition of any investments by the Fund or to determine the timing of any takedown, distribution, or liquidation of the Fund.

***Limitation of Liability and Indemnification* -** The Operating Agreement limits the circumstances under which the Manager and certain other persons can be held liable to the Fund. As a result, Members of the Fund will have a more limited right of action in certain cases than they would in the absence of these provisions. In addition, such persons are entitled to indemnification from the Fund, except under certain limited circumstances. See "Summary of Terms of the Fund – Indemnification."

***The Fund is registered as an investment company, so investors do not have the protections of the Investment Company* Act -** The Fund is not an investment company subject to the Investment Company Act. Accordingly, potential investors do not have the protections afforded by that statute which, for example, requires investment companies to have a majority of disinterested directors and regulates the relationship between the investment company and its investment manager.

***Private Offering; Lack of Regulatory Review* -** The offering of Interests for investment is a nonpublic offering and, as such, is not registered under federal or state securities laws. Investors will not have the benefit of a review of this offering, the Memorandum or any other Fund documents by the SEC or any state securities commission.

***Investment Company Regulation* -** The Fund relies on an exemption from the Investment Company Act to avoid requirements that the Fund register as an "investment company" under, and comply with the substantive provisions of, the Investment Company Act. If the Fund were required to be registered as an investment company, the Investment Company Act would require, among other things, that the Fund have a board of directors, some of whom were unrelated to the Manager, compel certain custodial arrangements and regulate the relationship and transactions between the Fund and the Manager and/or TSG Alpha. Compliance with some of those provisions could possibly reduce certain risks of loss, although such compliance could significantly increase the Fund's operating expenses and limit the Fund's investment and trading activities. Interpretations of exemptions from registration are complex and uncertain in several respects, and as a result, there can be no assurance that the Fund will remain entitled to rely on such exemptions. If the Fund were found not to have been entitled to such reliance, the Fund, the Manager, and TSG Alpha could be subject to legal actions by the SEC and others and the Fund could be forced to terminate its business under adverse circumstances

***Changes in Applicable* Law -** The Fund must comply with various legal requirements and exemptions therefrom applicable to them, including the exemptions contained in Section 3(c) of the Investment Company Act and the requirements of federal and state securities laws. If any law or regulation applicable to the Fund currently in effect should change or be interpreted or administratively implemented in a manner inconsistent with the intended manner of operation of the Fund, or if any new laws or regulations should be enacted, the legal requirements to which the Fund are subject could differ materially from current requirements and/or the manner of operation of the Fund might have to be restructured. See "Certain Regulatory Matters."

***Undisclosed Risk* -** The above mentioned risks are not meant to be a complete and comprehensive list of risks associated with an investment in the Fund. There might very well be a risk that was not disclosed in this Memorandum. Investing in venture capital funds similar to the Fund is very risky and could result in a complete loss of principal. Investments in the Fund are intended for sophisticated investors capable of performing their own independent diligence, research and analysis, and risk assessment.

***Financial Crises and Effects on Global Financial Markets* -** World financial markets have in the past experienced and may in the future experience extraordinary market conditions, including, among other things, extreme losses and volatility in securities markets and the failure of credit markets to function. In reaction to these events, regulators in the U.S. and several other countries previously have taken and may in the future take regulatory actions. However, global financial markets may remain volatile, and it is uncertain whether regulatory actions will be able to prevent losses and volatility in securities markets. It is possible that regulatory actions might increase the possibility of future volatility. Regulations may

increase market fragmentation and decrease the global flow of capital as it may be too difficult for the Fund and other market participants to comply with multiple regulatory regimes. There may be significant new regulations that could limit the Fund's activities and investment opportunities or change the functioning of capital markets, and there is the possibility of regional and/or worldwide economic downturn. Consequently, the Fund may not be capable of, or successful at, preserving the value of its assets, generating positive investment returns or effectively managing its risks.

***Cyber Security Breaches and Identity Theft -*** The information and technology systems of the Manager, its affiliates, TSG Alpha, the SPV, the Fund, and their respective service providers and their portfolio companies may be vulnerable to damage or interruption from computer viruses, network failures, computer and telecommunication failures, infiltration by unauthorized persons, other security breaches and/or usage errors by their respective professionals. The techniques used to obtain unauthorized access to data, disable or degrade service, or sabotage systems change frequently and may be difficult to detect for long periods of time. Hardware or software acquired from third parties may contain defects in design or manufacture or other problems that could unexpectedly compromise information security.

Although the Manager and/or its affiliates have implemented, or expect to implement measures to manage risks relating to these types of events, if these systems are compromised, become inoperable for extended periods of time or cease to function properly, the Manager, its affiliates, TSG Alpha, the Fund, their respective service providers and/or their portfolio companies may have to make a significant investment to fix or replace them. The failure of these systems for any reason could cause significant interruptions in such parties' operations and/or a failure to maintain the security, confidentiality or privacy of sensitive data, including personal information relating to investors (and the beneficial owners of investors). Such a failure could harm the reputation of the Manager, its affiliates, TSG Alpha the Fund and/or their portfolio companies, subject any such entity and their respective affiliates to legal claims and/or otherwise affect their business and financial performance.

***Business Continuity and Disaster Recovery -*** The business operations of the Manager, its affiliates, TSG Alpha, the Fund, the SPV, and the Portfolio Company(ies) may be vulnerable to disruption in the case of catastrophic events such as fires, natural disaster (e.g., tornadoes, floods, hurricanes and earthquakes), terrorist attacks, pandemics, or other circumstances resulting in property damage, network interruption and/or prolonged power outages. Although the Manager, and/or its affiliates have implemented, or expect to implement, measures to manage risks relating to these types of events, there can be no assurances that all contingencies can be planned for. These risks of loss can be substantial and could have a material adverse effect on the Fund and the Members' investments therein

***Tax-Related Risks -*** There are substantial tax risks associated with an investment in the Fund. The following paragraphs summarize some of the principal tax risks to Investors. Because the tax aspects of the offering are complex and may differ depending on individual tax circumstances, you must consult with and rely on your tax advisor concerning the tax aspects of the offering. The following tax risks should be read in conjunction with "Certain Tax and ERISA Considerations."

The Manager intends the Fund to be treated as a partnership for federal income tax purposes. As a partnership, the Fund will not be subject to entity-level federal income tax. Instead, the Members of the Fund will be required annually to take into account their respective distributive shares of the Fund's items of taxable income, gain, loss, deduction, and credit, without regard to whether any distributions are made by the Fund. Accordingly, Members may recognize taxable income for federal, state, and local income tax purposes without receiving any or a sufficient distribution from the Fund with which to pay the taxes thereon.

If the Fund were classified as an association or a publicly traded partnership taxable as a corporation, instead of as a partnership, the Fund would pay federal income tax at corporate rates on its net income, and distributions to the Members would generally be dividends to the extent of the Fund's "earnings and profits" (as defined for tax purposes). Any such tax at the entity level would result in a reduction in the amount of cash available for distribution to the Members.

***Delayed Schedules K-1 -*** The Fund may be unable to provide the final Schedule K-1 to Members for any given fiscal year until after April 15 of the following year. The Manager will endeavor to provide

Members with estimates of the taxable income or loss allocated to their investment in the Fund on or before such date, but the final Schedule K-1 may not be available until completion of the Fund's annual audit, if an audit is performed. Members may be required to obtain extensions of the filing date for their income tax returns at the federal, state, and local levels.

***Force Majeure -*** The Fund's investments may be affected by force majeure events (i.e., events beyond the control of the party claiming that the event has occurred, including, without limitation, acts of God, fire, flood, earthquakes, outbreaks of an infectious disease, pandemic, or any other serious public health concern, war, terrorism, labor strikes, major plant breakdowns, pipeline or electricity line ruptures, failure of technology, defective design and construction, accidents, demographic changes, government macroeconomic policies, social instability, etc.). Some force majeure events may adversely affect the ability of a party (including the Fund or a counterparty to the Fund) to perform its obligations until it is able to remedy the force majeure event and/or prompt precautionary government-imposed closures of certain travel and business. In addition, forced events, such as the cessation of the operation of machinery for repair or upgrade, could similarly lead to the unavailability of essential machinery and technologies. These risks could, among other effects, adversely impact the Fund's returns, cause personal injury or loss of life, disrupt global markets, damage property, or instigate disruptions of service. In addition, the cost to the Fund of repairing or replacing damaged assets resulting from such force majeure event could be considerable. Force majeure events that are incapable of or are too costly to cure may have a permanent adverse effect on the Fund's expected returns. Certain force majeure events (such as war, terrorism, or an outbreak of an infectious disease) could have a broader negative impact on the world economy and international business activity generally, or in any of the countries in which the Fund may invest and the markets the Fund may trade specifically. Military action or governmental sanctions prompted by certain force majeure events may further impact general economic conditions and market liquidity internationally or in the specific markets the Fund invests. Additionally, a major governmental intervention into industry, including the nationalization of an industry or the assertion of control over industry assets, could result in losses to the Fund, including if its investments are canceled, unwound or acquired (which could be without adequate compensation). Any of the foregoing may therefore adversely affect the performance of the Fund and its investments.

***Forward-Looking Statements -*** Opinions. Statements contained in this Memorandum (including those relating to forecasts, estimates, current and future market conditions and trends in respect thereof) that are not historical facts are based on current expectations, estimates, projections, opinions and/or beliefs of the Manager or its affiliates. Such statements involve known and unknown risks, uncertainties and other factors, and undue reliance should not be placed thereon. Moreover, certain information contained in this Memorandum constitutes "forward-looking" statements, which can be identified by the use of forward-looking terminology such as "may," "can," "will," "would," "seek," "should," "expect," "anticipate," "project," "estimate," "intend," "forecast," "continue," "target" or "believe" or the negatives thereof, or other variations thereon or comparable terminology. Due to various risks and uncertainties, including those set forth herein, actual events or results or the actual performance of the Fund may differ materially from those reflected or contemplated in such forward-looking statements.

**Risk Related to the SPV and its underlying Portfolio Company Investment**
The Manager has decided to invest in this SPV, which holds interest in the Portfolio Company. Of course, this investment comes with several risks, including but not limited to the following:

***Significant Position -*** The Fund's position in  may be significant, potentially resulting in the Fund acquiring (i) more than five percent (5%) of a class of securities of the SPV which would require the filing of a Schedule 13D or 13G statement with the SEC, or (ii) more than ten percent (10%) of a class of securities of the SPV, which would limit the Fund's ability to trade in such securities, including the disgorgement of short-swing profits and a prohibition on short sales of such securities, as well the other restrictions contained in Section 16 of the Securities Exchange Act of 1934, as amended.

***SPV or Portfolio Company Bankruptcy Risk –*** The SPV may hold interest in the Portfolio Company that is in a new industry with many regulations. Portfolio Companies in this space may not always be profitable as they continue to navigate the legal and technical requirements for operating their business. If the industry in which a Portfolio Company cannot gain traction, then the Portfolio Company's value

will decrease, resulting in the Portfolio Company, and possibly the SPV holding assets of the Portfolio Company, filing for bankruptcy.

***Publicity Risk –*** A Portfolio Company's visibility may be subject to intense media scrutiny and review. Should the Portfolio Company experience technology mishaps or other management failures that are captured by the public, it may impact the Portfolio Company's stock price. A decrease in Portfolio Company's stock price will reduce the value of the Fund's investment in the SPV.

***Risks of Emerging Competitors -*** Even if the Portfolio Company achieves profitability, it may be unable to maintain or increase profitability. As the industry the Portfolio company participates in continues to grow, more inexpensive methods of conducting business within that industry may be developed. This may cause the Portfolio Company to experience a material adverse effect on its business, financial condition and operational results if growth and operating performance fail to meet investor and/or analyst expectations.

***Lack of Market for Products Risks -*** The success of the Portfolio Company's business may depend on its ability to effectively market and its products or services to the public. Sales growth will depend on the Portfolio Company's ability to implement strategic initiatives, and such initiatives may not be effective in generating sales growth. Future marketing campaigns may fail to attract more customers to be cost-effective.

***Key Persons Risk –*** The departure of personnel behind the development of the business of the Portfolio Company process, such as its CEO, can impede the Portfolio Company's ability to develop new products or services and compete with the rest of the industry participants. Should an announcement of key persons departing the Portfolio Company be made, it may be detrimental to the business's growth.

***Intellectual Property Risks -*** The success of Relativity Space depends, in part, upon successful prosecution, maintenance, enforcement, and protection of Relativity Space's owned and licensed intellectual property. To protect intellectual property rights, Relativity Space may be required to spend significant resources to monitor and protect these rights. Litigation may be necessary in the future to enforce its intellectual property rights and to protect its trade secrets. Such litigation could be costly, time consuming, and distracting to management and could result in the impairment or loss of portions of Relativity Space's intellectual property. Furthermore, efforts to enforce intellectual property rights may be met with defenses, counterclaims, and countersuits attacking the validity and enforceability of intellectual property rights. The inability to protect proprietary technology, as well as any costly litigation or diversion of management's attention and resources, could disrupt the Relativity Space business, as well as have a material adverse effect on its financial condition and results of operations. The results of intellectual property litigation are difficult to predict and may require Relativity Space to stop using certain technologies or offering certain services or may result in significant damage awards or settlement costs. There is no guarantee that any action to defend, maintain or enforce Relativity Space's owned or licensed intellectual property rights will be successful, and an adverse result in any such proceeding could have a material adverse impact on its business, financial condition, operating results and prospects. In addition, Relativity Space may from time to time face allegations that they are infringing, misappropriating or otherwise violating the intellectual property rights of third parties, including the intellectual property rights of its competitors. Irrespective of the validity of any such claims, Relativity Space could incur significant costs and diversion of resources in defending against them, and there is no guarantee any such defense would be successful, which could have a material adverse effect on Relativity Space's business, contracts, financial condition, operating results, liquidity and prospects.

***Accuracy of Public Information –*** The Manager has selected this investment in the SPV, and the SPV's underlying interests in the Portfolio Company, in part, on the basis of information and data filed with various government regulators or made directly available to the Manager by the Portfolio Company or through the SPV or other sources. Although the Manager evaluates all such information and data and ordinarily seeks independent corroboration when the Manager considers it appropriate, the Manager cannot confirm the completeness, genuineness, or accuracy of such information and data, and in some

cases, complete and accurate information is not available. The investment may not perform as expected if the information is inaccurate.

***Inside Information -*** From time to time, the Manager and/or its affiliates may come into possession of inside information relating to the investment. Under applicable securities laws, this may limit the Fund's ability to sell the investment for a period of time.

**The foregoing list of risk factors does not purport to be a complete enumeration or explanation of the risks involved in an investment in the Fund. Prospective investors should read the entire Memorandum and consult with their own advisers before deciding to subscribe for Interests**

## CERTAIN REGULATORY MATTERS

**Securities Act of 1933 -** The offer and sale of Interests in the Fund will not be registered under the 1933 Act in reliance upon the exemption from registration provided by Section 4(a)(2) thereof and Rule 506 of Regulation D promulgated thereunder. Each Investor must be an “accredited investor”, as such term is defined in Rule 501 of Regulation D under the Securities Act, and will be required to represent that it is acquiring its Interests for investment purposes and not for resale or distribution, and to provide sufficient information to enable the Fund to verify that each investor is an “accredited investor”.

**Investment Company Act of 1940 -** It is anticipated that the Fund will be exempt from the provisions of the Investment Company Act. The Fund will rely on the exemption contained in Section 3(c)(1) of the Investment Company Act, which exempts issuers that are not making and do not presently propose to make a public offering of their securities.

# TAX AND ERISA CONSIDERATIONS

**Certain U.S. Federal Income Tax Considerations - The following discussion is for informational purposes only and is not intended as tax or legal advice. The disclosures in this Memorandum are not intended or written to be used, and cannot be used, for the purposes of avoiding penalties under any federal tax laws. The following discussion was written to support the promotion or marketing of the transactions or matters described in this Memorandum. Each potential investor should seek advice based on the investor's particular circumstances from an independent tax adviser.**

This discussion is based on the Fund's intended plan of operation, as described in this Memorandum and the Operating Agreement, applying the federal income tax laws as currently in effect as contained in the Internal Revenue Code of 1986, as amended (the "Code"), U.S. Department of Treasury regulations promulgated thereunder (the "Treasury Regulations"), and relevant judicial decisions and administrative guidance. The federal tax laws are subject to change, and any such change may materially affect the tax consequences of an investment in the Fund. No rulings or opinions of counsel have been or will be requested with respect to any tax- related matter discussed herein. There can be no assurance that the positions the Fund takes on its tax returns will be accepted by the Internal Revenue Service ("IRS"). This discussion relates only to U.S. federal income taxes and not to any local, state, or foreign taxes or U.S. federal taxes other than income taxes.

Because this discussion is a general summary, it does not address all aspects of federal income taxation that may be relevant to a particular Investor in light of the Investor's particular circumstances, nor does it address, unless explicitly noted (and only to the extent so noted), certain types of investors subject to special treatment under the federal income tax laws, including but not limited to tax-exempt organizations (except as discussed under "Tax-Exempt Investors" below), insurance companies, financial institutions, broker-dealers, dealers in securities or currencies, traders in securities that elect to use the mark-to-market method of accounting for their securities, Investors who are themselves partnerships or other pass-through entities for U.S. federal income tax purposes, regulated investment companies, real estate investment companies, real estate mortgage investment conduits, expatriates, persons liable for alternative minimum tax, persons whose "functional currency" is not the U.S. dollar, persons holding their investment as part of a hedging, constructive sale or conversion, straddle, or other risk-reducing transaction, or persons acquiring their interests in the Fund in connection with the performance of services. Except to the extent explicitly noted under "Non-U.S. Investors" below, this summary addresses only Investors who are U.S. persons, i.e., individual citizens or residents of the United States, corporations and other business entities organized under the laws of the United States, any state, or the District of Columbia, estates with income subject to United States federal income tax, or trusts subject to primary supervision by a United States court and for which United States persons control all substantial decisions.

Portions of this discussion address the ability of Investors to utilize items of loss or deduction arising from the Fund's activities. Potential investors are cautioned that the Fund will not be operated for the purpose of generating tax deductions, losses, credits, or other benefits. Investors should not anticipate that an investment in the Fund will yield items of deduction, loss, or credit to offset items of income or gain from other sources.

**"Partnership" Status**

The Fund intends to be treated as a partnership for federal income tax purposes. In general, as discussed below, partnerships are not separate taxable entities. However, certain "publicly traded partnerships" are taxed as corporations for federal income tax purposes. A partnership is "publicly traded" for this purpose if its interests are traded on an established securities market or are readily tradable on a secondary market (or the substantial equivalent thereof), as defined in the Code.

If the Fund were classified as an association or a publicly traded partnership taxable as a corporation, the Fund would pay federal income tax at corporate rates on its net income, and distributions would in general be dividends to the extent of the Fund's "earnings and profits" (as

defined for tax purposes), with distributions in excess thereof being treated first as a return of capital and thereafter as capital gain. Any such tax at the entity level would result in a reduction in the amount of cash available for distribution to the Members. This discussion of material federal income tax consequences assumes that the Fund will be treated as a partnership (other than a publicly traded partnership taxable as a corporation) for federal income tax purposes.

***Taxation of the Fund's Operations***

As a partnership, the Fund will not be subject to entity-level federal income tax. Instead, the Members of the Fund will be required annually to take into account their respective distributive shares of the Fund's items of taxable income, gain, loss, deduction, and credit, without regard to whether any distributions are made by the Fund. Although the Fund will not be subject to federal income tax, it will compute its taxable income like an individual, except that certain deductions are not allowed, and certain items must be separately stated on the Fund's annual federal partnership information tax returns. The Fund's taxable year will be determined in accordance with the requirements of the Code and is expected to be the calendar year. The Fund also will provide Members with statements to assist Members in determining and reporting on their federal income tax returns items of taxable income, gain, loss, deduction, and credit arising from their investment in the Fund. While the Fund will endeavor to provide timely tax reporting to its Members, it cannot guarantee that this can be accomplished in any year or at all. It may be that in any given fiscal year such reporting may not be available until after April 15 of the following year. Members, therefore, should be prepared to obtain extensions of the filing date for their income tax returns at the federal, state, and local level.

***Taxation of Members***

Each Member will be required to report separately on its own federal income tax return, its respective distributive share of the Fund's items of taxable income, gain, loss, deduction, and credit for the taxable year of the Fund ending with or within the Member's taxable year, regardless of whether the Member has received or will receive any distribution of cash or property from the Fund. It is possible that Members will incur tax liabilities attributable to the Fund that exceed the amount of cash distributions made to them. Generally, ordinary income or loss earned or incurred by the Fund will be ordinary income or loss to the Members, and capital gain or loss earned or incurred by the Fund will be capital gain or loss to the Members.

The Fund's distributive shares of income, gain, loss, deduction, and credit are allocated in accordance with the Fund's Operating Agreement. The Fund expects that such allocations will be respected by the IRS as either having "substantial economic effect" (or be deemed to have substantial economic effect) or being determined in accordance with a "partner's interest in the partnership." However, the regulations regarding when allocations are respected for tax purposes are very complex, and there can be no assurance that the allocations described in the Operating Agreement will be respected by the IRS.

Generally, cash distributions received by a Member from the Fund (as opposed to allocations of taxable income or loss) will only be taxable to the extent such distributions exceed the Member's basis in its Fund interest. A Member's basis in its Fund interest generally will be reduced (but not below zero) by the amount of such distribution. Distributions of property (other than cash) received by a Member from the Fund are generally not taxable. Instead, such distributions (other than liquidating distributions) of property other than cash will reduce the Member's basis (but not below zero) in its Fund interest by the amount of the Fund's adjusted basis in such property immediately before its distribution.

If the Fund does not qualify as an "investment partnership" within the meaning of Section 731(c)(3)(C) of the Code, a Member receiving a distribution of marketable securities from the Fund may recognize taxable gain to the extent the fair market value of the distributed securities plus any distributed money exceeds the Member's basis in its Fund interest. A Member selling appreciated securities distributed to it tax-free by the Fund will generally recognize taxable gain based on the total appreciation in the value of the securities (subject to certain adjustments and exceptions in the case of a distribution in liquidation of a Member's Fund interest), including such appreciation that accrued while the securities were held by the Fund.

***Investments***

The Fund expects to invest in the securities of Portfolio Companies and in other investment funds, special purpose vehicles or other entities rather than directly engage in any business operations. The federal income tax consequences of a particular investment will vary depending on the nature and structure of such investment. The type of income earned by the Fund from its investment in other investment funds, special purpose vehicles or other entities will depend on the structure of the underlying entity, and where the underlying entity is taxed as a partnership, on the type of investments selected by the underlying entity.

Domestic Portfolio Companies taxed as corporations, unlike those taxed as partnerships, are subject to federal income tax and will report separately their income, gains, losses, deductions, and credits on their own tax returns. Interest or dividends earned by the Fund from such Portfolio Companies will generally be ordinary income. The Fund expects to be treated as an investor (rather than as a trader or dealer) in Portfolio Company securities, and as such the Fund expects that gains or losses from the disposition of its investments in domestic Portfolio Companies taxed as corporations will typically be capital gains or losses, long-term if the Fund holds the investment for more than one year.

If the Fund invests in domestic Portfolio Companies taxed as partnerships, such Portfolio Companies, like the Fund, will not be subject to federal income tax. The Fund must take into account its distributive share of such a Portfolio Company's items of taxable income, gain, loss, deduction, and credit without regard to whether the Fund receives actual distributions, and such tax items must be reported by the Investors. Moreover, the Fund and Investors will be deemed engaged in any trade or business carried on by a Portfolio Company taxed as a partnership. The Fund expects that gains or losses from the disposition of its investments in domestic Portfolio Companies taxed as partnerships will typically be capital gains or losses, long-term if the Fund holds the investment for more than one year, except that gains or losses attributable to inventory or unrealized receivables (defined broadly to include, among others, recapture items, market- discount t-bonds, short-term obligations, and stock in certain foreign corporations) will be ordinary income or loss.

If the Fund invests in foreign entities, the tax consequences will vary widely depending on the jurisdiction and structure of the Portfolio Company. Foreign Portfolio Companies treated as corporations for U.S. federal income tax purposes may be classified as "controlled foreign corporations" or "passive foreign investment companies" under the Code, subject to a variety of unfavorable federal income tax consequences, including but not limited to accelerating the timing of taxable income to the Investors or altering the character (i.e., ordinary vs. capital gain) of an Investor's income from the Fund. Gains or losses from certain foreign currency transactions attributable to exchange rate fluctuations are treated as ordinary income or loss. In addition to taxing the Portfolio Company's operations, foreign jurisdictions may impose withholding taxes on dividends, interest, or other payments to the Fund. Subject to numerous limitations, Members may be entitled to a credit or deduction for their share of such withholding taxes and certain other foreign taxes incurred by the Fund. The Fund intends to conduct its activities to minimize the negative tax consequences of investing in foreign entities, but the Fund cannot ensure that it will achieve any particular tax results. Each potential investor should consult an independent tax advisor regarding the consequences of the Fund's investment in any foreign entities in light of the investor's particular circumstances.

If the Fund invests in real property or other non-securities assets, the type of income allocated to the Members will depend on the type of income generated by such assets. The Fund intends to, but can make no assurance that it will, hold such assets as capital assets as an investor rather than as a trader or dealer. Therefore, the Fund intends that the disposition of such assets will generate capital gain or loss for the Members.

***Limitation on Certain Deductions***

The Fund intends to engage in investment activities rather than in any active trade or business. As a result, non- capitalized expenses of the Fund will represent "miscellaneous itemized deductions" for

non-corporate taxpayers, deductible only to the extent they exceed two percent (2%) of a taxpayer's adjusted gross income. Overall itemized deductions for individual taxpayers are subject to further limitations.

The Code and Treasury Regulations limit the ability of Members to utilize other losses and deductions that may arise from the Fund's activities. For instance, allocations of loss or deduction from the Fund, or the ability to utilize such allocations, may be limited by a Member's adjusted capital account or its adjusted basis in its interest in the Fund. Additionally, the use of capital losses is subject to significant limitations, as is the use of deductions for "investment interest" should the Fund use leverage in its investments. Individuals and certain closely held corporations are subject to the "passive activity" and "at risk" rules that limit a Member's ability.to utilize losses allocated from the Fund. The Fund's organizational expenses may be amortizable by the Fund only over a 15-year period, if at all. Certain expenses incurred by the Fund in offering and selling Fund interests will be non-deductible altogether. Under rules for "tax- exempt use losses," if the Fund includes Tax-Exempt Investors or Non-U.S. Investors (both defined below) not subject to U.S. taxation, or certain related organizations, and the Fund's allocations of profit and loss are not "qualified allocations" under the Code, the Fund's deductions related to certain tangible property will be limited. Furthermore, depreciation periods and methods for the Fund's depreciable property may be determined under an "alternative depreciation system" that is less favorable than otherwise periods and methods.

***Disposition of Interest in the Fund***

Upon a sale or transfer of an Interest in the Fund, a Member will recognize gain or loss equal to the difference between such Member's amount realized (as determined for tax purposes) and such Member's adjusted tax basis in the Interest (or portion thereof) sold or transferred. A Member's "amount realized" generally will include both the fair market value of the consideration received and the Member's allocable share of any liabilities of the Fund. A Member's tax basis in its Interest in the Fund initially will be the amount paid for the Fund Interest plus the Member's share (as determined for federal income tax purposes) of any liabilities of the Fund, and will thereafter be adjusted as required under the Code to give effect on an ongoing basis to the Member's share of the Fund's tax items, distributions, and liabilities. The rules governing basis adjustments and the taxation of distributions are complex, and prospective investors should consult with their own tax advisors concerning these rules.

A Member's gain or loss upon a disposition of its Interest in the Fund will typically be capital gain or loss, long- term if the Member holds the interest for more than one year, except that gains or losses attributable to inventory or unrealized receivables (defined broadly to include, among others, recapture items, market-discount bonds, short-term obligations, and stock in certain foreign corporations) will be ordinary income or loss. As described above, the use of capital losses is subject to significant limitations.

***Non-U.S. Investors***

The discussion below addresses the application of certain federal income tax laws to Investors who are not U.S. persons ("**Non-U.S. Investors**"). The application of the federal tax laws to non-U.S. persons is very complex, and this summary does not address all aspects of those laws.

If the Fund is deemed engaged in a U.S. trade or business, then a Non-U.S. Investor of the Fund will be deemed engaged in a U.S. trade or business. A Non-U.S. Investor deemed engaged in a U.S. trade or business is subject to federal income tax on any income "effectively connected" with that trade or business on similar terms and rates as a U.S. person. In those circumstances, the Fund must withhold tax on the Non-U.S. Investor's distributive share of effectively connected income, and the Non-U.S. Investor must file a U.S. tax return. Furthermore, the Non-U.S. Investor may be subject to U.S. federal income tax on its gain from the disposition of its Interest in the Fund, and, if a corporation, the Non-U.S. Investor may be subject to an additional thirty percent (30%) branch profits tax on its earnings and profits effectively connected with the U.S. trade or business.

A Non-U.S. Investor's distributive share of the net gain recognized upon a disposition by the

Fund of a United States real property interest would be treated for federal income tax purposes as if it were effectively connected with a U.S. trade or business. In general, the Fund must withhold tax on the Non-U.S. Investor's distributive share of such net gain and each Non-U.S. Investor would be required to report its share of such gain on a U.S. tax return. The term "United States real property interest" generally would include: (i) an interest in real property in the United States or Virgin Islands; (ii) shares of stock in a U.S. corporation that does not have a publicly traded class of stock outstanding if fifty percent (50%) or more of the value of the corporation's assets at any point during the preceding five (5) years consisted of interests in United States real property; and (iii) shares of stock in a U.S. corporation that does have a publicly traded class of stock outstanding where (A) the corporation satisfies the real property ownership test described in clause(ii), above, and (B) the Fund held (directly or pursuant to certain attribution rules) more than five percent (5%) of the outstanding stock of any publicly traded class of shares or held shares of non-publicly traded stock with a fair market value greater than that of five percent (5%) of the publicly traded class of the corporation's stock with the lowest fair market value.

Where not "effectively connected" with a U.S. trade or business, a Non-U.S. Investor's distributive share of the Fund's capital gains will not be subject to U.S. tax, and its distributive share of the Fund's dividends, interest, and certain other income will be subject to a thirty percent (30%) withholding tax. Under certain circumstances, the withholding tax may be reduced or eliminated if a Non-U.S. Investor properly certifies to its entitlement to tax treaty benefits or the "portfolio interest" exception.

The Fund generally intends not to engage in a U.S. trade or business in its own activities. However, to the extent the Fund may invest in Portfolio Companies or investment funds or other entities treated as partnerships that engage in a U.S. trade or business (or are themselves deemed to be engaged in a U.S. trade or business), or invest in United States real property interests, there can be no assurance that no part of a Non-U.S. Investor's distributive share of income from the Fund will be treated as effectively connected with a U.S. trade or business. Each potential investor should consult an independent tax advisor regarding the consequences of a cross-border investment in the Fund in light of the investor's particular circumstances.

***Foreign Account Tax Compliance* Act -** The Foreign Account Tax Compliance Act ("FATCA") imposes a thirty percent (30%) withholding tax on any "withholdable payment" to (i) a "foreign financial institution," unless such institution enters into an agreement with the U.S. government to collect and provide to the U.S. tax authorities substantial information regarding U.S. account holders of such institution (which would include certain equity and debt holders of such institution, as well as certain account holders that are foreign entities with United States owners), or (ii) a foreign entity that is not a financial institution, unless such entity provides the withholding agent with a certification identifying the substantial U.S. owners of the entity, which generally includes any U.S. person who directly or indirectly owns more than ten percent (10%) of the entity. Under certain circumstances, a Non-U.S. Investor might be eligible for refunds or credits of such taxes.

"Withholdable payments" subject to FATCA will include U.S.-source payments otherwise subject to nonresident withholding tax, and also include the entire gross proceeds from the sale of any equity or debt instruments of U.S. issuers (in either case to exclude payments made on "obligations" that were outstanding on March 18, 2015). The withholding tax will apply regardless of whether the payment would otherwise be exempt from U.S. nonresident withholding tax (e.g., under the portfolio interest exemption or as capital gain). The IRS is authorized to provide rules for implementing the FATCA withholding regime with the existing nonresident withholding tax rules.

FATCA withholding will apply to U.S.-source payments otherwise subject to nonresident withholding tax made on or after January 1, 2017 and to the payment of gross proceeds from the sale of any equity or debt instruments of U.S. issuers made on or after January 1, 2018.

Non-U.S. Investors are urged to consult with their tax advisors regarding the effect, if any, of FATCA to them based on their particular circumstances.

**Certain ERISA Considerations -** The Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder (together, "ERISA") govern the investment of assets of benefit plans covered by ERISA and other entities that are deemed to hold assets of such ERISA-covered plans (each, a "Benefit Plan Investor"). The following discussion of certain ERISA requirements (which will be deemed to reference the comparable requirements under the Code) that may apply to Benefit Plan Investors in the Fund is general in nature, is based on current law, statutory authority, and administrative interpretations as of the date of this Memorandum and is not intended to address every issue that may be applicable to the Fund or a particular investor under ERISA.

**The following discussion is not intended to and does not constitute legal advice, and accordingly, each prospective investor should consult with its own legal counsel in order to understand the ERISA issues affecting the investor and the Fund.**

***Fiduciary Issues- -***When deciding to invest in the Fund, fiduciaries of a Benefit Plan Investor should consider their basic fiduciary duties under Section 404 of ERISA, which requires them to discharge their investment duties prudently, solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing benefits to plan participants and beneficiaries and defraying the reasonable administrative expenses of the Plan (as defined below).

In analyzing the prudence of an investment in the Fund, fiduciaries of a Benefit Plan Investor should also consider whether the investment is consistent with the Benefit Plan Investor's governing documents and applicable law, including: (i) whether the investment in the Fund is prudent for the Benefit Plan Investor; (ii) whether the risk, structure and operation of the fee arrangements have been adequately disclosed and whether such arrangements further the interests of the Benefit Plan Investor; (iii) whether the Benefit Plan Investor's current and anticipated liquidity needs would be met, given the limited rights to redeem or transfer the interest in the Fund; (iv) the role of the investment as part of the Benefit Plan Investor's overall portfolio and the overall diversification of that portfolio; (v) whether the investment is permitted under the Benefit Plan Investor's governing documents; (vi) the fact that the Fund will consist of a diverse group of investors, and the management of the Fund will not take into account the particular objectives of any investor or class of investors; and (vii) the matters discussed above under the section entitled "Risk Factors." The fiduciaries of each prospective Benefit Plan Investor will be deemed by the Benefit Plan Investor's investment in the Fund to have represented that they have been informed of and understand the Fund's investment objectives, policies, and strategies, and that the decision to invest in the Fund is consistent with their fiduciary responsibilities under ERISA.

ERISA, and certain comparable provisions of the Code, also impose certain duties, obligations and responsibilities on fiduciaries of Benefit Plan Investors, and prohibit acts of fiduciary self-dealing and certain transactions between Benefit Plan Investors and "parties-in-interest" or "disqualified persons" (as such terms are defined in ERISA and the Code) with respect to such investors. A party in interest or disqualified person who engages in a prohibited transaction may be subject to excise taxes and other penalties and liabilities under ERISA and the Code. Each Benefit Plan Investor will be required to represent, and will be deemed by its investment in the Fund to represent, that it has not received any investment advice from the Manager or any agent of the Fund, or any affiliate thereof, with respect to its proposed investment in the Fund, that the fiduciary of the Benefit Plan Investor has independently made the decision to invest in the Fund and that the acquisition and holding of an Interest in the Fund will not result in a prohibited transaction under ERISA.

***Plan Asset Issues -*** Generally, under the United States Department of Labor Regulations §2510.3-101 et. seq., as amended by Section 3(42) of ERISA (the "**Plan Assets Regulations**"), when a benefit plan covered by ERISA acquires an equity interest in another entity, the plan's assets include its investment, but do not, solely by reason of its investment, include any of the underlying assets of the entity. However, when a plan invests in an equity interest of an entity such as the Fund, which is neither a publicly traded security nor a security issued by an investment company registered under the Investment Company Act, its assets may include both the equity interest itself and an undivided interest in each of the underlying assets of the entity, unless an exemption from this "look-through" rule applies. If no exemption applies, any person exercising authority or control regarding the management or

disposition of the underlying assets of the entity is a fiduciary to each ERISA plan directly or indirectly investing in the entity. In addition, the fiduciary making an investment in the entity on behalf of a Benefit Plan Investor could be deemed to have delegated its asset management responsibility to the persons managing the entity, the assets of the entity could be subject to ERISA's reporting and disclosure requirements and transactions involving the assets of the entity could be subject to the fiduciary responsibility and prohibited transaction provisions of ERISA and Section 4975 of the Code (unless a statutory or administrative exemption were applicable to the transaction). The "look-through" rule will not apply to an entity in which a plan invests if the investment is made through the purchase of "publicly offered securities," as defined under the Plan Asset Regulations or the entity is either an "operating company," as defined under the Plan Asset Regulations or equity participation by Benefit Plan Investors in the entity is not "significant" under the Plan Asset Regulations. The interests in the Fund will not constitute "publicly offered securities" for purposes of the Plan Asset Regulation. In addition, the Fund will not be registered under the Investment Company Act and the Fund does not currently intend to qualify as an "operating company" for purposes of the Plan Asset Regulation. Therefore, if equity participation in the Fund by "benefit plan investors" is "significant" within the meaning of the Plan Asset Regulations, the assets of the Fund could be considered to be the assets of investors that are Plans.

Under Section 3(42) of ERISA, Benefit Plan Investors include plans that are subject to Title I of ERISA or Section 4975 of the Code or any entity whose underlying assets include plan assets by reason of a plan's investment in that entity. Participation of Benefit Plan Investors in an investment vehicle, such as the Fund, will be deemed to be "significant" under the Plan Asset Regulations if twenty-five percent (25%) or more of the value of any class of equity interests in the entity is held by Benefit Plan Investors, determined by disregarding the interests held by any person having discretionary authority or control with respect to the assets of the entity, any person who provides investment advice for a fee with respect to such assets and any affiliate of such persons. Accordingly, the Manager intends to manage the Fund so that Benefit Plan Investors in the aggregate do not own twenty-five percent (25%) or more of any class of equity interests in the Fund, determined by excluding any equity interests owned by the Manager, its employees, or its affiliates, so that the Fund's assets are not deemed to include "plan assets" of any plan subject to ERISA. To this end, the Manager, in its sole discretion, may compel the redemption of all or a portion of the Interests held by any or all of the Benefit Plan Investors to the extent it deems necessary or advisable, in its sole discretion, to avoid meeting or exceeding the twenty-five percent (25%) limit, and the Manager reserves the right to meet or exceed the twenty-five percent (25%) limit in its sole discretion and thereafter comply with the requirements of ERISA. In the event that twenty-five percent (25%) or more of any class of equity interests in the Fund is deemed to be held by Benefit Plan Investors, the assets of the Fund will be deemed to include plan assets and will be subject to the requirements and limitations applicable to the investment of plan assets under ERISA.

The sale of any Interest in the Fund to a Plan is in no respect a representation by the Manager that such an investment meets all relevant legal requirements with respect to investments by plans generally or any particular plan or that such an investment is appropriate for plans generally or for any particular plan. Any plan fiduciary that proposes to cause a Plan to invest in the Fund should consult with its counsel regarding the applicability of the fiduciary responsibility, prohibited transaction and other applicable provisions of ERISA and Section 4975 of the Code to such an investment and to confirm that such investment will not constitute or result in a prohibited transaction of any other violation of the requirements of ERISA or the Code.

Any insurance company proposing to invest assets of its general account in the Fund should consider the extent to which such investment would be subject to the requirements of ERISA.

Governmental plans and certain church plans, while not subject to the fiduciary responsibility provisions of ERISA or the provisions of Section 4975 of the Code, may nevertheless be subject to state or other federal laws that are substantially similar to the foregoing provisions of ERISA and the Code. Fiduciaries of such plans should consult with their counsel before investing in the Fund.

Based on certain revisions to the Form 5500 Annual Return ("Form 5500") that generally became effective on January 1, 2009, benefit plan investors may be required to report certain compensation paid by the Fund (or by third parties) to the Fund's service providers as "reportable indirect compensation" on

Schedule C to Form 5500. To the extent any compensation arrangements described herein constitute reportable indirect compensation, any such descriptions are intended to satisfy the disclosure requirements for the alternative reporting option for "eligible indirect compensation," as defined for purposes of Schedule C to the Form 5500.

***Suitability Standards --*** This offering is made by the Fund in reliance on the safe harbor exemption provided by Rule 506 of Regulation D under the 1933 Act, and in reliance upon exemptions from registration contained in the "blue sky" laws of various states.

Each Investor will be required to represent that the Interests are being acquired for the Investor's own account, and not for the account of others, for investment purposes only and not with a view to the sale or distribution thereof in whole or in part. The speculative nature of the Fund's investment focus, together with the lack of liquidity of the Interests, makes the purchase of Interests suitable only for Investors who have adequate financial means and who can afford the total loss of their investment. Accordingly, Investors will be required to make certain representations as to their net worth, income, and ability to bear the loss of their investment.

In addition, Investors will be required to provide sufficient information to enable the Fund to verify that each Investor is an "accredited investor", as such term is defined in Rule 501 of Regulation D under the 1933 Act.

The suitability standards discussed below represent minimum suitability standards for prospective Investors. Prospective Investors are encouraged to consult their own investment or tax advisers, accountants, legal counsel, or other advisers to determine whether an investment in the Fund is appropriate. (See "Risk Factors.")

For the reasons described below and under "Risk Factors" the purchase of the Interests should be considered a highly risky investment. A prospective Investor, in determining whether the Interests are a suitable investment, should carefully consider that: (i) transferability of the Interests will be limited; (ii) no public or secondary market exists or is likely to develop in the near future for the Interests; and (iii) the Interests have not been registered under the 1933 Act, and accordingly, they cannot be resold unless they are so registered or an exemption from such registration requirement is available. Each Investor will be required to acknowledge in writing to the Fund that they understand that said Interests may not be resold except in compliance with such registration provisions as well as restrictions on resale imposed by the securities laws of the state where prospective investors reside. The Fund will not undertake to register the Interests for resale under the 1933 Act or to issue public information in such form as to make available the use of Rule 144 promulgated by the Securities and Exchange Commission under the 1933 Act for resale of the Interests.

Purchase of the Interests is suitable only for a person of economic means who has no need for liquidity in this investment and who has adequate means of providing for their current needs, even if investment in the Interests results in a total loss. Accordingly, no investor should purchase Securities who cannot bear the risk of loss. The Fund reserves the right to accept or reject any subscription to purchase Interests. An investment in the Interests is restricted to Accredited Investors who have such business and financial experience that demonstrate they are capable of evaluating the merits and risks of an investment in the Fund and of protecting their interests in the transaction.

***<u>Interests Will Be Sold Only to Accredited Investors</u>***

The Interests will be sold only to Accredited Investors, and the Fund will require that Investors provide information sufficient for the Fund to verify each Investor's status as an Accredited Investor. (See "Subscription Procedures".)

To be an Accredited Investor, you, or the entity through which you are investing must fall within any of the following categories at the time of the sale of the Interests to you:

1) A bank as defined in Section 3(a)(2) of the 1933 Act, or a savings and loan association or other

institution as defined in Section 3(a)(5)(A) of the 1933 Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; an insurance company as defined in Section 2(13) of the 1933 Act; an investment company registered under the Investment Company Act of 1940, as amended, or a business development company as defined in Section 2(a)(48) of that Act; a Small Business Investment Company licensed by the United States Small Business Administration under Section 301(c) of the Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if the plan has total assets in excess of $5,000,000; an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of that Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5.0 million or, if a self- directed plan, with investment decisions made solely by persons that are accredited investors;

2) A private business development company as defined in Section 202(a) (22) of the Investment Advisers Act of 1940, as amended;

3) An organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended; a corporation; a Massachusetts or similar business trust; a limited liability company or a partnership; in each case, not formed for the specific purpose of acquiring the Interests and with total assets in excess of $5,000,000;

4) A manager or executive officer of the Fund;

5) A natural person who has an individual net worth (determined by subtracting total liabilities from total assets; but excluding the net value of such person's primary residence)[1], or joint net worth with such person's spouse, in excess of $1,000,000.

6) A natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

7) A trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Interests whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of Regulation D under the 1933 Act; or

8) An entity in which all of the equity owners are Accredited Investors.

**The suitability standards discussed herein are minimum requirements for prospective Investors, and the satisfaction of these standards does not necessarily mean that the Interests are a suitable investment for as prospective investor. Investors must also be "qualified purchasers" as defined in the Investment Company Act as applicable.**

The Fund reserves the right, in its sole discretion, to reject any potential Investor, to require potential Investors to furnish a financial statement or other information before admission as a Member, and to restrict the size of investments.

## SUBSCRIPTION PROCEDURES

To subscribe for Interests, prospective Investors will need to review and execute a copy of the Subscription Agreement contained in the Subscription Booklet of which this Memorandum is apart (the "**Subscription Booklet**"), which also includes a Prospective Investor Questionnaire and a counterpart signature page to the Fund's Operating Agreement. You must deliver those executed documents to the Fund, along with either a check made payable to *TSG SECONDARY FUND 7 LLC* in an amount equal to your Capital Contribution, or a wire transfer of your Capital Contribution using the instructions set forth

[1] For purposes of determining the net value of the person's primary residence, indebtedness secured by the person's primary residence (i) within sixty (60) days of the date of the person's purchase of the Interests, and/or (ii) in excess of the property's estimated fair market value, must be treated as a liability in the net worth calculation

below.

Subject to applicable state laws, subscriptions will not be subject to revocation by prospective Investors, but may be rejected by the Fund, in whole or in part, in the Manager's sole discretion, in which event the subscription funds will be returned to the Investor. The Fund will deliver countersigned copies of the documents contained in the Subscription Booklet to Members as soon as reasonably practicable after such subscriptions have been accepted.

**Wire Instructions**

Bank: **Flagstar Bank N.A. | 360 Motor Pkwy #150 Hauppauge NY 11788**
Account: **TSG Vision Fund Series AI 1024 LLC**
**Account #: 1505759601**
**Routing Number: 026013576**

## *CERTAIN STATE LAW NOTICES*

### NOTICE TO ALL PROSPECTIVE INVESTORS

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THE INTERESTS HAVE NOT BEEN RECOMMENDED, APPROVED OR DISAPPROVED BY THE SEC, ANY STATE SECURITIES COMMISSION OR ANY OTHER REGULATORY AUTHORITY. NONE OF THE FOREGOING AUTHORITIES HAS PASSED UPON, OR ENDORSED THE MERITS OF, THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE INTERESTS HAVE NOT BEEN REGISTERED WITH THE SEC UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), OR UNDER THE SECURITIES LAWS OF ANY STATES, AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT AND SUCH STATE LAWS. THE INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE, AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE 1933 ACT AND SUCH APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREUNDER. THERE IS NO PUBLIC OR OTHER MARKET FOR THE INTERESTS, NOR IS IT LIKELY THAT ANY SUCH MARKET WILL DEVELOP. THEREFORE, INVESTORS MUST EXPECT TO BE REQUIRED TO RETAIN OWNERSHIP OF THE INTERESTS AND BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD.

### CERTAIN STATE NOTICES

**FOR RESIDENTS OF ALASKA**
THE SECURITIES OFFERED HAVE NOT BEEN REGISTERED WITH THE ADMINISTRATOR OF SECURITIES OF THE STATE OF ALASKA PROVISIONS OF 3 AAC 08.500—3 THROUGH AAC 08.506. THE INVESTOR IS ADVISED THAT THE ADMINISTRATOR HAS MADE ONLY A CURSORY REVIEW OF THE REGISTRATION STATEMENT AND HAS NOT REVIEWED THIS DOCUMENT SINCE THE DOCUMENT IS NOT REQUIRED TO BE FILED WITH THE ADMINISTRATOR. THE FACT OF THE REGISTRATION DOES NOT MEAN THAT THE ADMINISTRATOR HAS PASSED IN ANY WAY UPON THE MERITS, RECOMMENDED, OR APPROVED THE SECURITIES. ANY REPRESENTATION TO THE CONTRARY IS A VIOLATION OF A.S. 45.55.170. THE INVESTOR MUST RELY ON THE INVESTOR'S OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED IN MAKING AN INVESTMENT DECISION ON THESE SECURITIES.

**FOR RESIDENTS OF ARIZONA**
THE INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF THE STATE OF ARIZONA (THE "ARIZONA ACT"), AND THEY THEREFORE HAVE THE STATUS OF SECURITIES ACQUIRED IN AN EXEMPT TRANSACTION UNDER ARS SECTION 44-1844 OF THE ARIZONA ACT. THE INTERESTS CANNOT BE RESOLD WITHOUT REGISTRATION UNDER THE ARIZONA ACT OR UNLESS AN EXEMPTION THEREFROM IS AVAILABLE.

**FOR RESIDENTS OF ARKANSAS**
THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER SECTION 14(B)(14) OF THE ARKANSAS SECURITIES ACT AND SECTION 4(2) OF THE SECURITIES ACT OF 1933, AS AMENDED. A REGISTRATION STATEMENT RELATING TO THESE SECURITIES HAS NOT BEEN FILED WITH THE ARKANSAS SECURITIES DEPARTMENT OR WITH THE SECURITIES COMMISSION. NEITHER THE DEPARTMENT NOR THE COMMISSION HAVE PASSED UPON THE VALUE OF THESE SECURITIES, MADE ANY RECOMMENDATIONS AS TO THEIR PURCHASE, APPROVED OR DISAPPROVED THE OFFERING, OR PASSED UPON THE ACCURACY OR ADEQUACY OF THE MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

**FOR RESIDENTS OF CALIFORNIA**
THE SALE OF THE MEMBERSHIP INTERESTS WHICH ARE THE SUBJECT OF THIS SUBSCRIPTION AGREEMENT HAS NOT BEEN QUALIFIED WITH THE DEPARTMENT OF BUSINESS OVERSIGHT OF

THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH MEMBERSHIP INTERESTS OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION THEREFORE PRIOR TO SUCH QUALIFICATION IS UNLAWFUL, UNLESS THE SALE OF MEMBERSHIP INTERESTS IS EXEMPT FROM THE QUALIFICATION BY SECTION 25100, 25102 OR 25105 OF THE CALIFORNIA CORPORATIONS CODE. THE RIGHTS OF ALL PARTIES TO THIS SUBSCRIPTION AGREEMENT ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED, UNLESS THE SALE IS SO EXEMPT.

**NOTICE TO COLORADO RESIDENTS**
THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE COLORADO SECURITIES ACT OF 1981 BY REASON OF SPECIFIC EXEMPTION THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OF 1981, IF SUCH REGISTRATION IS REQUIRED.

**FOR RESIDENTS OF CONNECTICUT**
THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER SECTION 36b-16 OF THE CONNECTICUT UNIFORM SECURITIES ACT AND, THEREFORE, CANNOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES ACT OF THE STATE, IF SUCH REGISTRATION IS REQUIRED, OR UNLESS AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

**FOR RESIDENTS OF FLORIDA**
PURSUANT TO THE LAWS OF THE STATE OF FLORIDA, IF SALES ARE MADE TO FIVE (5) OR MORE INVESTORS IN FLORIDA, ANY FLORIDA INVESTOR MAY, AT HIS OPTION, WITHDRAW, UPON WRITTEN (OR TELEGRAPHIC) NOTICE, ANY PURCHASE HEREUNDER WITHIN A PERIOD OF THREE (3) DAYS AFTER (A) THE INVESTOR FIRST TENDERS OR PAYS TO THE PARTNERSHIP, AN AGENT OF THE PARTNERSHIP OR AN ESCROW AGENT THE CONSIDERATION REQUIRED HEREUNDER, (B) THE INVESTOR DELIVERS HIS EXECUTED SUBSCRIPTION AGREEMENT, OR (C) THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH INVESTOR, WHICHEVER OCCURS LATER.

**FOR RESIDENTS OF GEORGIA**
THESE SECURITIES HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE “GEORGIA SECURITIES ACT OF 1973” AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

**FOR RESIDENTS OF HAWAII**
NEITHER THIS MEMORANDUM NOR THE SECURITIES DESCRIBED HEREIN HAVE BEEN APPROVED OR DISAPPROVED BY THE COMMISSIONER OF SECURITIES OF THE STATE OF HAWAII, NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.

**FOR RESIDENTS OF ILLINOIS**
THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER SECTION 5 OF THE ILLINOIS SECURITIES ACT OF 1953 (THE “ACT”). THE SECURITIES MAY NOT BE RESOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY, UNLESS SUBSEQUENTLY REGISTERED UNDER THE ACT OR UNLESS AN EXEMPTION FROM REGISTRATION THEREFROM IS AVAILABLE.

**FOR RESIDENTS OF MAINE**
THESE SECURITIES ARE BEING SOLD PURSUANT TO AN EXEMPTION FROM REGISTRATION WITH THE BANK SUPERINTENDENT OF THE STATE OF MAINE UNDER SECTION 10502(2)(R) OF TITLE 32 OF THE MAINE REVISED STATUTES. THESE SECURITIES MAY BE DEEMED RESTRICTED SECURITIES AND AS SUCH THE HOLDER MAY NOT BE ABLE TO RESELL THE SECURITIES UNLESS PURSUANT TO REGISTRATION UNDER STATE OR FEDERAL SECURITIES LAWS OR UNLESS AN EXEMPTION UNDER SUCH LAWS EXISTS.

**FOR RESIDENTS OF MARYLAND**
THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE MARYLAND SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE RESOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY, UNLESS SUBSEQUENTLY REGISTERED UNDER THE ACT OR THE MARYLAND SECURITIES ACT, IF SUCH REGISTRATION IS REQUIRED.

**FOR RESIDENTS OF MASSACHUSETTS**
THE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE MASSACHUSETTS SECURITIES ACT BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE MASSACHUSETTS IS SECURITIES ACT, IF SUCH REGISTRATION IS REQUIRED.

**FOR RESIDENTS OF MICHIGAN**
THE SECURITIES REFERRED TO IN THIS MEMORANDUM WILL BE SOLD TO AND ACQUIRED BY THE HOLDER IN A TRANSACTION EXEMPT UNDER SECTION 4(2) (b) (9) OF THE MICHIGAN BLUE SKY LAW. THE SECURITIES HAVE NOT BEEN REGISTERED UNDER SAID LAW AND MAY NOT BE RESOLD EXCEPT IN ACCORDANCE WITH SAID LAW WITHIN SIX MONTHS OF THE COMMENCEMENT OF THE OFFERING OF THE SECURITIES, OR THE TERMINATION OF THE SUBSCRIPTION PERIOD AS SET FORTH IN THIS PRIVATE PLACEMENT MEMORANDUM, WHICHEVER FIRST OCCURS, THE COMPANY SHALL, IF SALES OF THE SECURITIES ARE MADE TO MICHIGAN RESIDENTS, PREPARE AND FURNISH TO INVESTORS A DETAILED WRITTEN STATEMENT OF THE APPLICATION OF PROCEEDS OF THE OFFERING, AS WELL AS ANY OTHER APPLICABLE STATEMENTS AND REPORTS REQUIRED TO BE FURNISHED UNDER APPLICABLE LAW.

**FOR RESIDENTS OF MINNESOTA**
THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE MINNESOTA DEPARTMENT OF COMMERCE NOR HAS THE DIVISION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFERING DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**FOR RESIDENTS OF NEVADA**
THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE NEVADA UNIFORM SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING.

**FOR RESIDENTS OF NEW HAMPSHIRE**
NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN APPLICATION FOR A LICENSE HAS BEEN FILED WITH THE STATE OF NEW HAMPSHIRE NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE DIRECTOR OF THE OFFICE OF SECURITIES REGULATION THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE, COMPLETE AND NOT MISLEADING. NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION OR EXCEPTION IS AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE DIRECTOR OF THE OFFICE OF SECURITIES REGULATION HAS PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED, OR GIVEN APPROVAL TO, ANY PERSON, SECURITY OR TRANSACTION. IT IS UNLAWFUL TO MAKE OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CLIENT OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF THIS PARAGRAPH.

**FOR RESIDENTS OF NEW JERSEY**
THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE BUREAU OF SECURITIES OF THE STATE OF NEW JERSEY NOR HAS THE BUREAU PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. THE FILING OF THE WRITTEN OFFERING DOES NOT CONSTITUTE APPROVAL OF THE ISSUE OR SALE THEREOF BY THE BUREAU OF SECURITIES. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL. PURCHASERS WHO HAVE NOT RECEIVED A COPY OF THIS MEMORANDUM AT LEAST 48 HOURS PRIOR TO PAYMENT, RECEIPT OF CONFIRMATION OR RECEIPT

OF SECURITY, WHICH EVER OCCURS FIRST, SHALL HAVE THE RIGHT TO RESCIND THE PURCHASE WITHIN 48 HOURS AFTER RECEIVING THE MEMORANDUM. NO BROKER-DEALER, SALESMAN OR ANY OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OTHER THAN THOSE CONTAINED EXPRESSLY IN THE MEMORANDUM.

**FOR RESIDENTS OF NEW MEXICO**
THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE NEW MEXICO DEPARTMENT OF REGULATION AND LICENSING, NOR HAS THE SECURITIES DIVISION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFERING DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFERING.

**FOR RESIDENTS OF NEW YORK**
THIS CONFIDENTIAL OFFERING MEMORANDUM HAS NOT BEEN REVIEWED BY THE STATE OF NEW YORK, THE NEW YORK STATE DEPARTMENT OF LAW OR THE ATTORNEY GENERAL OF THE STATE OF NEW YORK PRIOR TO ITS ISSUANCE AND USE NOR HAS ANY OF THE FOREGOING PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL

**FOR RESIDENTS OF NORTH DAKOTA**
THESE SECURITIES HAVE NOT BEEN APPROVED BY THE SECURITIES COMMISSIONER OF THE STATE OF NORTH DAKOTA NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**FOR RESIDENTS OF OHIO**
THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE OHIO SECURITIES ACT (THE “OHIO ACT”), AND THEREFORE CANNOT BE RESOLD OR TRANSFERRED BY THE INVESTOR EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER THE OHIO ACT, OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER THE OHIO ACT.

**FOR RESIDENTS OF OREGON**
THE SECURITIES OFFERED HAVE BEEN REGISTERED WITH THE CORPORATION COMMISSIONER OF THE STATE OF OREGON UNDER PROVISIONS OF OAR 441-65-060 THROUGH 441-65-240. THE INVESTOR IS ADVISED THAT THE COMMISSIONER HAS MADE ONLY A CURSORY REVIEW OF THE REGISTRATION STATEMENT AND HAS NOT REVIEWED THIS DOCUMENT SINCE THIS DOCUMENT IS NOT REQUIRED TO BE FILED WITH THE COMMISSIONER. THE INVESTOR MUST RELY ON THE INVESTOR’S OWN EXAMINATION OF THE COMPANY CREATING THE SECURITIES, AND THE TERMS OF THE OFFERING INCLUDING THE MERITS AND RISK INVOLVED IN MAKING AN INVESTMENT DECISION ON THESE SECURITIES.

**FOR RESIDENTS OF PENNSYLVANIA**
EACH PERSON WHO ACCEPTS AN OFFER TO PURCHASE THE SECURITIES OFFERED HEREBY HAS A RIGHT TO WITHDRAW HIS ACCEPTANCE PURSUANT TO SECTION 207(L.C.) OF THE PENNSYLVANIA SECURITIES ACT OF 1972 (70 P.S. 1-207(M)). SUCH PERSON MAY ELECT, WITHIN TWO BUSINESS DAYS FROM THE DATE OF RECEIPT BY THE ISSUER OF HIS WRITTEN BINDING CONTRACT OF PURCHASE (OR IN THE CASE OF A TRANSACTION IN WHICH THERE IS NO BINDING CONTRACT TO PURCHASE, WITHIN TWO BUSINESS DAYS AFTER HE MAKES THE INITIAL PAYMENT FOR THE SECURITIES), TO WITHDRAW FROM HIS PURCHASE AGREEMENT AND RECEIVE A FULL REPAYMENT OF ALL MONIES PAID. SUCH A WITHDRAWAL WILL BE WITHOUT ANY FURTHER LIABILITY TO ANY PERSON TO ACCOMPLISH THIS WITHDRAWAL, A LETTER SHOULD BE SENT TO THE FUND, INDICATING THE INTENTION TO WITHDRAW SUCH LETTER SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMENTIONED SECOND BUSINESS DAY.

**FOR RESIDENTS OF RHODE ISLAND**
ALTHOUGH THE SECURITIES HEREIN DESCRIBED HAVE BEEN EXEMPTED FROM REGISTRATION PURSUANT TO TITLE 7, CHAPTER 11, OF THE RHODE ISLAND GENERAL LAWS, SUCH EXEMPTION DOES NOT CONSTITUTE APPROVAL, RECOMMENDATION OR ENDORSEMENT BY THE RHODE ISLAND DEPARTMENT OF BUSINESS REGULATION THAT THE INFORMATION PROVIDED HEREIN IS TRUE, COMPLETE, ACCURATE OR NOT MISLEADING.

**FOR RESIDENTS OF VERMONT**

EACH VERMONT PURCHASER WHO ACCEPTS AN OFFER TO PURCHASE THESE SECURITIES DIRECTLY FROM THE ISSUER OR AN AFFILIATE OF THE ISSUER SHALL HAVE THE RIGHT TO WITHDRAW SUCH ACCEPTANCE WITHOUT INCURRING ANY LIABILITY TO THE ISSUER OR ANY OTHER PERSON WITHIN THREE CALENDAR DAYS OF THE FIRST TENDER OF CONSIDERATION TO THE ISSUER, AN AFFILIATE OF THE ISSUER, OR AN ESCROW AGENT.

**FOR RESIDENTS OF WASHINGTON STATE**

THE ADMINISTRATOR OF SECURITIES HAS NOT REVIEWED THE OFFERING OR OFFERIN CIRCULAR AND THE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF ASHINGTON, CHAPTER 21.20 RCW, AND, THEREFORE, CANNOT BE RESOLD UNLESS THEY ARE REGISTERED UNDER THE SECURITIES ACT OF WASHINGTON, CHAPTER 21.20 RCW, OR UNLESS AN EXEMPTION FROM REGISTRATION IS AVAILABLE.